TRANS LEASING INTERNATIONAL, Plaintiff and Counterdefendant-Appellant, v. ANDREW J. SCHMER *et al.*, Defendants and Counterplaintiffs and Third–Party Plaintiffs-Appellees (Myo-Tech, Inc., Third-Party Defendant).

First District (4th Division)   No. 1—88—3201

Opinion filed January 18, 1990.

Sparacio & Allen, of Chicago (Stephen C. Allen, of counsel), for appellant.

Randall, Gayle & Patt, of Chicago (Michael G. Phillips, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Trans Leasing International, brought this action to recover money from defendants Andrew J. Schmer and Leonard J. Kronen, lessees under an equipment lease. The trial court held that portions of the lease were unconscionable as a matter of law and granted summary judgment in favor of defendants. Plaintiff appeals,

arguing that the trial court erred in three respects, by its findings: (1) the contract was unconscionable as a matter of law; (2) the return of the medical equipment terminated the lease as a matter of law; and (3) there was no genuine issue of material fact.

We reverse and remand.

BACKGROUND

On May 2, 1986, plaintiff and defendants executed a "noncancellable" lease for certain medical equipment known as "Comparative Muscle Tester 1000 and Portable Stand." Pursuant to the agreement, plaintiff ordered the equipment from a supplier designated by defendants. The applicable investment tax credit passed to defendants-lessees, who agreed to pay the cost of $6,015 in 36 equal installments. Defendants made only two of these payments, and, presumably because of difficulties with the machine, ceased payments under the lease. The parties discussed the status of the lease and the problems with the equipment on several occasions. In September 1986 defendants returned some of the leased equipment to plaintiff, who acknowledged receiving it. Plaintiff then shipped the equipment back to P.M. Health Products, the supplier.

In January 1987 plaintiff filed suit because of defendants' failure to make their monthly payments under the lease. Defendants filed an answer, affirmative defenses, and counterclaim and also filed a third-party complaint against an entity called Myo-Tech. The trial date on the third-party complaint has been continued pending the outcome of this appeal.

Defendants' motion for summary judgment makes various factual assertions regarding the defects in the leased medical equipment. It also claims that plaintiff accepted the defective equipment and agreed to replace it. Further, the motion states that a representative of plaintiff contacted defendant Kronen and proposed replacing the machine with a new and different one, which would cost more because of the upgraded equipment. Defendants did not want to pay the additional cost for the upgrading. Defendants' motion then concludes, in one paragraph, "The Plaintiff breached the Contract between the parties by failing to provide usable Equipment and it is undisputed that the Defendants returned and the Plaintiff accepted the Equipment and accordingly, the Contract between the parties was legally terminated in September 1986." The motion was accompanied by the affidavits of the two defendants.

In response, plaintiff relied on the language of the agreement that expressly disclaims any warranties of the equipment in question.

Plaintiff also cited the "Acceptance Notice and Equipment Disclaimer and Agreement," signed by defendants, which acknowledges their obligation to make payments under the lease regardless of any defect in the equipment. In this document defendants acknowledged that they received the designated equipment in good order and condition. Plaintiff also filed an affidavit of the senior collections officer, who controverted certain statements in defendants' affidavits regarding plaintiff's representations involving the return of the equipment.

The record does not contain any legal memoranda, nor does it contain a transcript of the argument presented to the court during the hearing on defendants' motion for summary judgment. The order that was entered on August 25, 1989, provides in pertinent part as follows:

"1. Part of the medical equipment was returned by the defendants to the plaintiff on September 19, 1986.

2. The contract (lease agreement) and 'Acceptance Notice and Equipment Disclaimer and Agreement' are unconscionable.

IT IS HEREBY ORDERED:-

Defendants' Motion for Summary Judgment is granted."

On September 23, 1988, the circuit court entered an express finding that there was no just reason to delay enforcement or appeal from the summary judgment.

OPINION

Defendants' motion for summary judgment was premised on two bases: (1) that the equipment was defective and useless for defendants' chiropractic practice; and (2) that plaintiff's acceptance of the equipment constituted the termination of the agreement and released them from liability. Both grounds raise factual questions that are not readily resolved by summary judgment unless the facts are not in dispute. As for the defects in the equipment, both defendants' affidavits list problems that they had with the machine. Since this machine was in their sole possession and control, however, it is not the type of assertion that plaintiff could readily controvert. More important, plaintiff's claim is premised on the terms of the agreement that release it from any liabilities or warranties of the equipment and place the risk of defects on lessee. Hence, from plaintiff's point of view, alleged defects in the machine are immaterial to its right to collect pursuant to the lease.

The trial court did not expressly find that the equipment was defective, and a finding to that effect in the August 25 order has been stricken out. It may be that this issue is not seriously in dispute, from

plaintiff's viewpoint, but it may well be an issue in the case involving the third-party defendant. For purposes of this appeal, we express no opinion as to the defective nature of the equipment, except as it bears on the central issue of who bears the risk of such defects as between lessee and lessor, and whether or not the lease agreement is unconscionable because of the disclaimer provisions.

The record does not indicate that defendants raised the issue of unconscionability in their motion. Instead, they relied on the fact that plaintiff accepted the machine. Ergo, they assert, the contract terminated, along with their obligations thereunder.

In our opinion, the trial court did not decide controverted issues of fact but instead held that the contract was unenforceable as a matter of law because of the lessor's attempt to disclaim responsibility for any defects by the provisions in the lease that put the risk of loss on the lessee. Accordingly, the central issue before us is whether the contract is so one-sided and oppressive as to negate a meaningful choice on the part of defendants. See *Piehl v. Norwegian Old Peoples' Home Society* (1984), 127 Ill. App. 3d 593, 596, 469 N.E.2d 705, 707 (holding that nursing home contract for continuing care of old person until her assets were depleted or until she was not eligible for medical assistance benefits was not unconscionable).

In *Walter E. Heller & Co. v. Convalescent Home of the First Church of Deliverance* (1977), 49 Ill. App. 3d 213, 365 N.E.2d 1285, the court was requested to apply the provisions of article 2 of the Uniform Commercial Code (which governs sales of goods) to equipment leases. (Ill. Rev. Stat. 1975, ch. 26, par. 2—101 *et seq.*) In finding that the Code does apply by analogy to equipment leases, the *Heller* court cautioned that it was not applying article 2 *"in toto,"* and noted significant differences between a lease and a sale. These differences include the transfer of title, risk of loss, financial considerations and bankruptcy proceedings. The court went on to consider whether the equipment lease in that case was unconscionable under the Code and concluded that it was not, both parties enjoying substantially equal bargaining power. The court rejected a separate challenge, similar to the one made by defendants in the instant case, that the lease's disclaimers of warranties could not be enforced because they were not in compliance with the Code's requirement that such disclaimers be conspicuously set off from the rest of the type.

The instant lease, like the one in *Heller*, provides that the lessor makes no express or implied warranties as to the equipment and that defects in the equipment, or the unfitness of it, will not relieve the lessees from their obligation to make payments.

In *Dillman Associates, Inc. v. Capitol Leasing Co.* (1982), 110 Ill. App. 3d 335, 442 N.E.2d 311, the court followed *Heller* and upheld an equipment lease against an unconscionability challenge. The court noted that the case did not involve an experienced businessman taking unfair advantage of a poorly educated consumer and stated, "Although plaintiff was under no compulsion to lease the equipment and could presumably have purchased it either outright or through the use of conventional financing, it chose to obtain a new copying machine by leasing one for reasons which do not appear in the record. After deciding to lease a new copier, the plaintiff was free to select the machine which would best suit its needs and circumstances. *** The [lessor] fulfilled its contractual obligations by purchasing and delivering to plaintiff the machine which plaintiff chose. *** *[Lessee] now asks us to declare the lease unconscionable because it is unable to assert against the lessor claims as to the equipment's inadequacy, for which the lessor bears no responsibility whatsoever.* We cannot accede to this request. Courts should not assume an overly paternalistic attitude toward the parties to a contract by relieving one or another of them of the consequences of what is at worst a bad bargain ***, and in declaring the lease in issue here unconscionable, we would be doing exactly that." (Emphasis added.) 110 Ill. App. 3d at 343, 442 N.E.2d at 317.

We find no substantial difference in the circumstances presented by the instant case and those found in *Heller* and *Dillman.* Equipment leases of this sort, which allow the lessee to choose the machine and supplier and obligate the lessee to bear the risk of defective equipment, are in the nature of secured financing agreements. A bank that lends money for the purchase of a piece of equipment would not be liable for defects in that equipment. Nor would the bank's possession of the collateral generally terminate the debtor's obligation to repay the loan. Similarly, we believe that a lessor who purchases equipment at the direction of a lessee for use in the lessee's business can legitimately contract to place the burden of defective equipment on the lessee. The lessee has the option of pursuing whatever warranties or other rights it may have against third parties.

■ In the pending case defendants, in addition to signing the lease containing the disclaimer, signed a separate document titled "Acceptance Notice and Equipment Disclaimer and Agreement." This document puts defendants on additional notice that plaintiff "makes no expressed or implied warranties as to any matter whatsoever, including, without limitation the condition of the equipment, its merchantability or its fitness for any particular purpose. No defect or un-

fitness of equipment shall release [lessees] of the obligation to pay rental payments or of any other obligations under this lease agreement." Because of this reiteration of the lease agreement's disclaimers, defendants' argument that the disclaimer was not conspicuous enough under the UCC loses force. The lease agreement itself sets off the disclaimer language by underscoring the following language, which is also printed in all capital letters:

"[Lessor will request the supplier to authorize lessee to enforce all warranties in its own name] BUT LESSOR ITSELF MAKES NO EXPRESS OR IMPLIED WARRANTIES AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION THE CONDITION OF EQUIPMENT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. NO DEFECT OR UNFITNESS OF THE EQUIPMENT SHALL RELIEVE LESSEE OF THE OBLIGATION TO PAY RENT OR OF ANY OTHER OBLIGATION UNDER THIS LEASE."

We hold that this notice meets the requirement of conspicuousness under the UCC.

■ Defendants also claim that they are not sophisticated businessmen, while plaintiff has substantial experience with leasing transactions. (They requested the trial court to take judicial notice of the substantial court filings plaintiff has brought.) We make no comment on the relevance of the court filings on the issue of the parties' relative business experience, but note that the issue is not whether plaintiff has more business expertise than defendants. Defendants are chiropractors, who presumably have complied with the educational and other requirements necessary to practice their trade. They wanted to use medical equipment in their practice and selected the supplier. They signed the agreement with plaintiff, whatever their motivations for leasing the equipment instead of purchasing it directly from the supplier or obtaining another mode of financing. We find no merit in the argument that they should be relieved of their contract, freely entered, because the equipment was defective. They are not left without a remedy, and they may not abandon the contract that expressly puts the risk of defective equipment on them.

■ We conclude that the lease and the notice of acceptance are not unconscionable. Accordingly, plaintiff is not barred from enforcing the contract on that ground.

Defendants' other base for summary judgment concerns plaintiff's acceptance of part of the equipment from defendants.

On this issue defendants contend that they were entitled to termi-

nate the contract, unilaterally, by returning the equipment because it was of no use to them. They also argue that plaintiff's acceptance of the machine should constitute an estoppel, presumably because plaintiff represented that it would replace the machine and did not.

■ We disagree with both contentions. The general law defendants cite regarding a party's duty to perform his part of the bargain before he can recover does not fit the facts here. Plaintiff was not in breach of the agreement, regardless of the perceived worthlessness of the machine. Plaintiff had expressly and clearly disclaimed responsibility for such an eventuality under the contract. Plaintiff had fully performed by purchasing the specified equipment from defendants' designated supplier. Regardless of who initiated the return of the machine, defendants were not automatically entitled to "terminate" the lease and stop paying plaintiff. On the contrary, the lease expressly states that defendants are not to be excused from performance because of defects in the machinery and states, in paragraph 17, "Any said taking of possession shall not constitute a termination of this LEASE and shall not relieve LESSEE of its original obligations." Defendants cite no facts indicating that plaintiff intended any waiver of rights or represented that it would accept the defective machinery in lieu of defendants' performance under the lease. That plaintiff might have been in a better position to receive a replacement machine from the supplier or otherwise mitigate damages does not mean that plaintiff intentionally relinquished its rights under the contract.

Moreover, defendants' reasoning that the acceptance of the machine constituted a termination of the contract and that this "put Plaintiff in breach of the Contract when it failed to have the equipment repaired or replaced" is flawed: if the contract was terminated plaintiff could not have had any contractual duty to have it repaired or replaced.

Nor do we find sufficient support in the record or case law for lessee's estoppel argument. The cases defendants cite in support are inapposite. In *Nagle v. General Merchandising Corp.* (1978), 58 Ill. App. 3d 344, 374 N.E.2d 1137, the purchaser of equipment sued its *supplier* for breach of contract. Some of the electronic game machines that the plaintiff had purchased were defective. The supplier contended that the buyer should look to the manufacturer's warranty, not to him. The court noted a pattern of conduct whereby the supplier assumed the responsibility to repair or replace the equipment, even paying for the repair bills. As to this aspect of the case, the court held that the defendant's attempt to insulate himself from responsibility for the defective machines was inconsistent with his prior conduct.

■ In the pending case, plaintiff was not the "supplier" and never took responsibility for repairing the machines or paying for same. Moreover, the contract specifically disclaims plaintiff's responsibility for any loss, damage, or expense caused directly or indirectly by the equipment, including loss of use of the machine. The entire contractual thrust was to limit plaintiff's responsibilities to the initial purchase and delivery of the equipment to defendants. The "Acceptance Notice and Equipment Disclaimer and Agreement" that defendants signed on May 16, 1986, indicates that the equipment was received by them and in "good order and condition and acceptable to [them]." It further "approve[s] payment by [plaintiff] to the supplier" and acknowledges that lessor has performed all of its contractual obligations. In other words, by accepting the equipment and approving the payment to the supplier, defendants undertook the risk of problems arising with the machinery.

We need not speculate whether and under what circumstances there may be a defense to the contract or a remedy against third parties. Certainly, the summary judgment entered below did not cover all possible issues that may occur at trial because the court only held the contract unenforceable as being unconscionable. Our reversal of the summary judgment returns the case to a trial setting, and we express no opinion as to the ultimate merits of the case or any legitimate defenses that may be available. We simply hold that the unconscionability doctrine does not bar enforcement of the contract and that plaintiff's acceptance of part of the equipment did not terminate the contract as a matter of law. Accordingly, we reverse the trial court's order granting summary judgment and remand this cause for further proceedings.

Reversed and remanded.

McMORROW, P.J., and JOHNSON, J., concur.