**GREATAMERICA LEASING CORPORATION, Plaintiff, Counterclaim Defendant,**

v.

**COZZI IRON & METAL INC., Defendant, Counterclaim Plaintiff.**

No. 99 C 3343.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 22, 1999.

David J. Chizewer, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for Plaintiff.

Mark A. LaRose, Mark A. LaRose, Ltd., Chicago, IL, Francesco E. DiVito, Law Office of Frank E. DiVito, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

I here consider whether a company that got in over its head in a business area about which it knew little should be held to the express terms of some plain and simple lease contracts that it signed. I conclude that it should so be held. Cozzi Iron & Metal, Inc. ("Cozzi"), an Illinois corporation with its principal place of business in Chicago, Illinois, leased more copying equipment than it needed from a firm called U.S. Office Equipment ("U.S.Office") under ten leases executed from February 1998 to December 1998. The leases were assigned to GreatAmerica Leasing Corporation ("GreatAmerica"), an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. GreatAmerica believes that Cozzi is in default for $372,-053.14, and demanded the monies it believes are due to it under the leases, plus attorneys' fees, costs, and interest. Failing to obtain satisfaction, it filed this diversity lawsuit. Cozzi demanded trial by jury, and made several affirmative defenses as well as counterclaiming under the Illinois Consumer Fraud Act, common law fraud, and various contract claims. GreatAmerica now moves to dismiss the counterclaims under Fed.R.Civ.P. 12(c), strike all the affirmative defenses but one (failure to mitigate damages), and strike the jury demand. I grant these motions.

### I.

I must begin with a discussion of subject matter jurisdiction. Cozzi lists as its "Third Affirmative Defense" the claim that the amount in controversy is $75,000 or less, so below the amount required for a diversity case under 28 U.S.C. § 1332(a), and I accordingly lack subject matter jurisdiction. This is not an affirmative defense, but no matter. According to Cozzi, on the date of filing, the past due amounts, interest, and penalties totaled only $30,-336.74. But when deciding whether a claim meets the jurisdictional minimum for the amount in controversy, "the plaintiff's evaluation of the stakes must be respected. 'It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" *Barbers, Hairstyling for Men & Women, Inc. v. Bishop,* 132 F.3d 1203, 1205 (7th Cir.1997) (*quoting St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283,

289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). "If, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury Indemnity Co.,* 303 U.S. at 289, 58 S.Ct. 586.

It does not appear to me to a legal certainty that GreatAmerica will never be able to recover more than $75,000. Cozzi's unsupported and unexplained assertion to the contrary is worthless—"one bald assertion is as good as another," *Olander v. Bucyrus Erie Co.,* 187 F.3d 599, 608 (7th Cir.1999)—especially where GreatAmerica has offered detailed, plausible, and, as far as I can tell, accurate calculations explaining the value of the case to be greater than the amount in controversy. Cozzi's figures in any event leave out attorneys' fees, to which GreatAmerica would be entitled under the contracts. I would not be surprised if the attorneys' fees incurred so far in this case, added to the amount that Cozzi admits it is worth, would push the case over the jurisdictional amount. If the litigation continues, I would be surprised if the attorneys' fees themselves did not exceed the jurisdictional amount. I therefore conclude that I have subject matter jurisdiction.

## II.

■ In a diversity case I apply federal procedural law and state substantive law, *Dawn Equipment Co. v. Micro–Trak Sys., Inc.,* 186 F.3d 981, 986 (7th Cir.1999), here, undisputedly, the law of Illinois. In a motion to dismiss a claim or counterclaim under either Fed.R.Civ.P. 12(b)(6) or Rule 12(c), I accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff—here, the counterclaim plaintiff. *Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490, 493 (7th Cir.1998). Such motions "should not be granted unless it appears beyond doubt that the plaintiff cannot

prove any facts that would support his claim for relief." *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. School,* 167 F.3d 1170, 1173 (7th Cir.1999) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Cozzi says that it was solicited by U.S. Office to lease copiers in February 1998. It "had never leased copiers before" and so was "not familiar with what would be fair pricing, terms, and conditions of copier leases." Therefore, Cozzi "was unfamiliar with how many copies it made in the normal course of its business on a monthly or annual basis." Cozzi asserts, and I must accept for the purposes of a motion to dismiss, that a U.S. Office Sales representative told Cozzi that it would only be responsible for the actual number of copies it made and that number would be determined after a few months. The leases Cozzi actually signed, however, called for a minimum monthly payment per copier of $1,996.40, regardless of whether any copies were made, and provided for penalties and interest in event of nonpayment. Cozzi says no one actually informed it of these terms or that the contracts were "subject to fine print terms and conditions on the reverse side" of the two-page leases, although Cozzi does not deny that it had the leases available to read at the time they were signed and the leases themselves state that Cozzi has read and understood the terms.

## III.

In this section I address Cozzi's counterclaims and affirmative defenses based on fraudulent inducement. Cozzi asserts that in including provisions in the leases different from its salesperson's oral representations GreatAmerica: (1) violated the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.* (the "Act") (Count I); (2) committed common law fraud (Count II); (3) breached the contracts between them and violated an implied covenant of good faith and fair dealing,[1] and therefore Cozzi demands

---

1. There is no independent cause of action in    Illinois for breach of an implied covenant of

(Count III)(4) rescission (Count IV) and (5) revocation of acceptance under the UCC, 810 ILCS § 5/2a–517 (Count V).

Cozzi's affirmative defenses in fraud, based on the same facts, include the claims that: (1) the contracts were fraudulently formed because Cozzi was not informed of the terms of the written leases it signed (Second Affirmative Defense), and (2) Cozzi therefore canceled the lease contracts (Fourth Affirmative Defense) or (3) modified them to reflect the oral understanding (Fifth Affirmative Defense).

■ These claims cannot be maintained. Cozzi signed the contracts which have the disputed language. Illinois uses a "four corners" rule in the interpretation of contracts, holding that "if the language of a contract appears to admit of only one interpretation, the case is indeed over." *Bourke v. Dun & Bradstreet*, 159 F.3d 1032, 1036 (7th Cir.1998) (internal citations omitted). As the Illinois Supreme Court recently restated this rule: "The terms of an agreement, if not ambiguous, should be generally enforced as they appear, and those terms will control the rights of the parties." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 230 Ill.Dec. 229, 693 N.E.2d 358, 368 (1998) (internal citations omitted). An unambiguous contract is interpreted by the court "as a matter of law without the use of parol evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill.2d 457, 236 Ill.Dec. 8, 706 N.E.2d 882, 884 (1999).[2]

The evidence of prior or contemporaneous agreements is normally excluded from the interpretation of a contract which, like these, is concededly unambiguous. Cozzi claims that the contracts were not integrated and that the complete understanding of the parties includes the oral agreements which contradict the written language. But the contracts specified that "[n]o individual is authorized to change any provision of this agreement." This unambiguously indicates that the writings reflect the complete understanding of the parties, which would be the normal presumption in Illinois contract law in any event.

■ Cozzi replies that in Illinois, fraud in the inducement may justify consideration of prior understandings which would be otherwise excluded under the parol evidence rule. *Carlile v. Snap–on Tools*, 271 Ill.App.3d 833, 207 Ill.Dec. 861, 648 N.E.2d 317, 323 (1995). But there was no fraud in the inducement. In order to sustain a cause of action for fraud in Illinois, the plaintiff must prove that the defendant made a false statement of material fact, which he knew or believed to be false, with the intent to induce the plaintiff to act in reliance on the statement and that the plaintiff did, in fact, act in reasonable reliance on that false statement and was injured as a result. *Los Amigos Supermarket, Inc., v. Metropolitan Bank and Trust Co.*, 306 Ill.App.3d 115, 239 Ill.Dec. 155, 713 N.E.2d 686, 694–95 (1999).

■ Cozzi cannot have reasonably relied on representations that were directly contrary to the plain language of the contracts it signed on ten separate occasions. Illinois courts "have consistently refused to extend the doctrine of fraudulent inducement to vitiate contracts where the complaining party could have discovered the fraud by reading the instrument and had the opportunity to do so. In such cases any reliance upon the claimed misrepresentation has been held to be unreasonable as a matter of law, so that the contract stands as written." *Kolson v. Vembu*, 869 F.Supp. 1315, 1322 (N.D.Ill.1994) (citing cases). "[A] party is not justified in rely-

---

good faith and fair dealing. *See* 810 ILCS 5/1–203 cmt. Cozzi does not adequately explain what the alleged breach of the covenant consisted in beyond the breach of the supposed oral understanding between the parties, or what available remedies for a breach of the covenant it seeks.

2. Cozzi complains that *Air Safety* is a contract interpretation case and not a fraudulent inducement case. As explained below, this is not a fraudulent inducement case either, which is why I dismiss Cozzi's allegations based on statutory and common law fraud.

ing on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge; and if he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations." *Schmidt v. Landfield*, 20 Ill.2d 89, 169 N.E.2d 229, 232 (1960).

Cozzi had the writing in front of its face, not once, but ten times. It would have taken Cozzi perhaps ten minutes to read the two-sided document. If Cozzi did not do so before it signed, or chose to rely on the oral representations of U.S. Office's salesperson despite the express language of the contracts, it has no one to blame but itself.

Cozzi responds that actual reliance is not required under the Illinois Consumer Fraud Act. The Illinois Supreme Court has said that to recover under the Consumer Fraud Act, a plaintiff need only show: "(1) a deceptive act or practice, (2) intent on the defendant's part that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce." *Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 205 Ill. Dec. 443, 643 N.E.2d 734, 754 (1994). There is no actual reliance requirement. *Id.* The Illinois Supreme Court, however, has said nothing about whether there is a reasonable reliance requirement as opposed to an actual reliance requirement. But several Illinois courts have found that in some circumstances there is such a requirement. "[No] private person seeking money damages (or rescission of a contract) may seek relief under the Act without establishing justifiable or reasonable reliance." *Elipas Enterprises, Inc. v. Silverstein*, 243 Ill.App.3d 230, 183 Ill.Dec. 752, 612 N.E.2d 9, 12 (1993) (*citing IK Corp. v. One Financial Place Partnership*, 200 Ill.App.3d 802, 146 Ill.Dec. 198, 558 N.E.2d 161, 170 (1990); *Lidecker v. Kendall College*, 194 Ill.App.3d 309, 141 Ill. Dec. 75, 550 N.E.2d 1121, 1124 (1990).)

There is no justifiable or reasonable reliance under the Act where a sophisticated business fails to take the time to read the plain and intelligible language of a short and simple contract, but relies instead on what we must assume to be the misstatements of a salesperson. The outcome might well be different if the party asserting the fraud against a large firm were an innocent or gullible consumer rather than a business person who deals with contracts on a regular basis. I might—though this is less certain—reach a different result if the contract were unreasonably long, opaque, arcane, obscure, or legalistic, such that even a fairly sophisticated business person might not be expected to read or understand it. (That, however, is what lawyers are for.)

But these circumstances do not apply here. In this case, Cozzi admits that it went blind into an arm's length deal between businesses about which it knew nothing, incurring liabilities it might have discovered by reading two pages of plain prose which it did not read, and got stuck. If U.S. Office's salespeople misrepresented the terms of the deal, as I must assume they did, they were less than straightforward. But in taking their easily verified word for it, Cozzi was less than smart. "Who are you gonna believe, me or your own eyes?", Groucho Marx once cracked. When a party doesn't even *use* his eyes but believes Groucho, that is not fraud under the Illinois Consumer Fraud Act.

### IV.

■ I now consider Cozzi's remaining affirmative defenses. Cozzi's First Affirmative Defense is that the contracts were unconscionable. In Illinois, unconscionability is not a favored defense in commercial contracts between businesses. A contract is unconscionable "when it is improvident, totally one-sided or oppressive. Although the courts will readily apply this doctrine to contracts between consumers and ... skilled corporate sellers, they are reluctant to rewrite the terms of

a negotiated contract between businessmen." *Walter E. Heller & Company, Inc. v. Convalescent Home of the First Church of Deliverance,* 49 Ill.App.3d 213, 8 Ill.Dec. 823, 365 N.E.2d 1285, 1289 (1977). "This is not the case of an experienced businessman taking unfair advantage of a poorly educated consumer.... [P]laintiff was under no compulsion to lease the equipment...." *Dillman and Associates, Inc. v. Capitol Leasing Co.,* 110 Ill.App.3d 335, 66 Ill.Dec. 39, 442 N.E.2d 311, 317 (1982) (rejecting the defense). See also *Trans Leasing Int'l, v. Schmer,* 194 Ill.App.3d 70, 141 Ill.Dec. 39, 550 N.E.2d 1085, 1088 (1990) (same). The contracts were not unconscionable.

Cozzi's Fifth Affirmative Defense is that the written leases were modified to incorporate the terms of the oral understanding. This is inconsistent with the plain language of the writings, which states: "[n]o individual is authorized to change any provision of this agreement." Presumably the leases might have been subsequently modified by a writing or replaced by a written novation, but none exists here. The contracts were not modified.

█ Cozzi's Seventh Affirmative Defense states that the assignment of the leases to GreatAmerica was ineffective because of lack of notice to Cozzi, but the contracts provide that the leases can be assigned without notice. Cozzi also complains that the assignments were improperly executed, but it lacks standing to make this argument. *See Liu v. T & H Machine, Inc.,* 191 F.3d 790, 797–98 (7th Cir.1999) ("A proponent must assert his own legal rights and interests, rather than basing his claim for relief upon the rights of third parties."). The contracts were properly assigned.

█ Cozzi's Eight Affirmative Defense is that GreatAmerica has failed to plead that it had a good faith belief that its prospect of payment was impaired before accelerating payments under the lease contracts, as required by 810 ILCS 5/2A–109. This provision in inapplicable. It requires a good faith belief of the prospect of im-

pairment when the contact states that payments may be a accelerated "at will" or "when [a party] deems himself ... insecure" or uses "words of similar import." The contracts here provide for acceleration upon default. Those are not "words of similar import."

## V.

█ Cozzi demands a jury trial. GreatAmerica moves to strike this demand. Quite apart from the fact that there is no right to a jury trial under the Consumer Fraud Act, *Martin,* 205 Ill.Dec. 443, 643 N.E.2d at 755, Cozzi waived any right it might have had to a jury trial in the contracts. A party may contractually waive its right to a jury trial. Cozzi says this waiver is unenforceable. Cozzi's best case is an unreported case where the district court held that a party did not knowingly and voluntarily waive the right. *Heller Financial v. Finch–Bayless Equip.,* 1990 WL 77500, at *2 (N.D.Ill.1990). There the provision was on last page of a five page contract and no evidence was presented that the waiving party was aware of provision. With Cozzi's case, the waiver was at the top of the second page of a two-page contract which included language stating that the contract had been read and understood. I agree with GreatAmerica that in the circumstances the waiver question is better illuminated by *Reggie Packing Co., Inc. v. Lazere Financial Corp.,* 671 F.Supp. 571, 573 (N.D.Ill. 1987) (finding effective waiver). Again, if I were considering contracts involving unequal bargaining power between a company and a consumer or if the contracts themselves were rather long and dense, I might come out differently. Here the lesson for Cozzi is: read before you sign.

In conclusion, I dismiss Cozzi's Counterclaims I through V and strike Cozzi's Affirmative Defenses numbered I–V, VII and VIII. I also strike Cozzi's demand for a jury trial. The question of mitigation of

damages (Cozzi's Affirmative Defense VI) remains.