**OFFICE OUTFITTERS, INC., d/b/a A.B. Dick Products Company of Texarkana, et al.**

v.

**A.B. DICK COMPANY, INC.; Gec, Inc.; and the General Electric Company, P.L.C.**

**No. 5:97CV114.**

United States District Court, E.D. Texas, Texarkana Division.

Feb. 8, 2000.

Josh R. Morriss, III, Atchley Russell Waldrop & Hlavinka, Texarkana, TX, Gregory Mark Baruch, Berry & Leftwich, Washington, DC, Charles Cary Patterson, Edward Lewis Hohn, Nix Patterson & Roach LLP, Daingerfield, TX, James Daniel Leftwich, Robert Stephen Berry, Berry & Leftwich, Washington, DC, for Office Outfitters, Inc.

Josh R. Morriss, III, Atchley Russell Waldrop & Hlavinka, Texarkana, TX, Charles Cary Patterson, Edward Lewis Hohn, Nix Patterson & Roach LLP, Daingerfield, TX, James Daniel Leftwich, Berry & Leftwich, Washington, DC, for Automated Office Systems, Inc., individually and as Class Representatives.

Elizabeth L. Grayer, Allen Rostron, Douglas D. Broadwater, Cravath Swaine & Moore, New York, NY, Damon Young, Young & Pickett, Texarkana, TX, for A.B. Dick Company, Inc., GEC, Inc.

## MEMORANDUM OPINION AND ORDER

FOLSOM, District Judge.

Before the Court is Defendants' Renewed Motion to Dismiss (R.Mot. Dismiss, docket no. 63). After careful consideration of Defendants' motion, and the pertinent law, the Court enters the following memorandum opinion and order.

### I.

#### Background and Procedural History.

This matter arises from the sale of A.B. Dick Company, Inc. ("A.B.Dick") by The General Electric Company, p.l.c. ("GEC") and events leading up thereto. GEC is a manufacturing conglomerate incorporated and having its principal place of business in the United Kingdom. GEC, Incorporated ("GEC, Inc.") is a wholly owned subsidiary of GEC and is incorporated in Delaware with its principal place of business in Illinois. A.B. Dick in turn is a wholly owned subsidiary of GEC, Inc. and is also incorporated in Delaware with its principal place of business in Illinois. A.B. Dick manufactures and sells equipment, supplies, and services used in commercial printing and graphic arts. A.B. Dick products and services are distributed though a network of independently owned and operated businesses ("distributors").

According to Plaintiffs, sometime in 1993 GEC decided to dispose of A.B. Dick. Since it no longer envisioned a continuing relationship, GEC wanted to limit or discontinue its long-term investment in A.B. Dick. But GEC recognized that decreasing its investment in A.B. Dick would be detrimental to the distributors. GEC also recognized that A.B. Dick was more valuable to potential buyers if it had an in-place network to distribute A.B. Dick products. Plaintiffs say this situation presented a dilemma for GEC: How could it take steps that would facilitate the sale or liquidation of A.B. Dick and at the same time not risk losing its valuable distribution network? The answer, Plaintiffs allege, was a scheme whereby GEC and its subsidiaries surreptitiously divested themselves of A.B. Dick while purporting to have a long-term commitment to A.B. Dick distributors. Plaintiffs say their businesses suffered substantial injury during the four-year course of this scheme.[1]

On April 4, 1997 four A.B. Dick distributors—two from Texas, one from Alabama, and one from Arizona—filed suit in this Court against GEC, GEC, Inc., and A.B. Dick. In their amended complaint Plaintiffs allege violation of federal racketeering and antitrust laws (counts one though four and count five), violation of Illinois's decep-

---

1. In early 1997 GEC sold A.B. Dick.

tive practices statute[2] (count six), breach of contract (count eight), equitable estoppel (count nine), equitable recoupment (count 10), and common law fraud (count 11).[3] (*See* Am.Compl., no. 30.) Defendants answered and filed motions to dismiss for failure to state a claim, FED.R.CIV.P. 12(b)(6).[4] Separately, Defendant GEC filed a motion to dismiss for lack of personal jurisdiction, *id.* at 12(b)(2). Pursuant to 28 U.S.C. § 636(b)(1) & (3) the Court referred Defendants' motions to United States Magistrate Judge Caroline Malone for report and recommendation. Judge Malone held a hearing on Defendants' motions, (*see* Tr. Hr'g, no. 47), and on March 1, 1999 recommended that Plaintiffs file a case statement with respect to their RICO claims. (*See* no. 57). Judge Malone recommended that Defendants' motions be denied insofar as they concerned Plaintiffs' RICO claims but that Defendants be allowed to renew their motions after Plaintiffs filed their RICO statement. With respect to most of Plaintiffs' other claims Judge Malone recommended that Defendants' motions to dismiss be denied.[5] The Court adopted Judge Malone's recommendations March 3, 1999. (*See* no. 61.)

On March 25, 1999 Plaintiffs filed their RICO case statement. (RICO stm't, no. 62.) Shortly thereafter Defendants together filed a renewed motion to dismiss. (R.Mot. Dismiss, no. 63.) On April 26, 1999 Plaintiffs filed their response, (Resp.R.Mot.Dismiss, no. 64), to which Defendants replied May 3, 1999, (R. Reply, no. 65). In their renewed motion Defendants argue that Plaintiffs failed to plead a cause of action with respect to their RICO claims in counts one through four, and with respect to their common law fraud claim in count 11. Defendants also argue that GEC is not subject to personal jurisdiction in this Court. The Court will address each argument in turn.

## II.

### Failure to State a Claim.

A motion to dismiss for failure to state a claim "is viewed with disfavor and is rarely granted." *See Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997). Dismissal for failure to state a claim is appropriate "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Rubinstein v. Collins*, 20 F.3d 160, 166 (5th Cir.1994). In examining the pleadings in a context of a motion to dismiss the Court must "accept as true all well-pleaded facts, and view them in the light most favorable to non-moving party." *See Capital Parks, Inc. v. Southeastern Adver. and Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir.1994).

### A.

#### Counts One Through Four: RICO.[6]

To state a claim under the RICO statute, 18 U.S.C. § 1962, a plaintiff must allege (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir.1989) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)). Defendants argue that Plaintiffs

---

2. 815 ILL.COMP.STAT. 505, § 2. For purposes of this motion the parties agree that Illinois law controls. (Am.Compl. at ¶ 34.)

3. Further, in count seven Plaintiffs seek a declaratory judgment stating the contracts in issue are terminable only for good cause.

4. Defendants later filed a supplement in support of their motions to dismiss (Defs.' Supp., no. 37), to which Plaintiffs responded (no. 38).

5. The one exception was Plaintiffs' equitable recoupment claim, count 10, with respect to which Judge Malone recommended that Defendants' motion to dismiss be granted.

6. For a comprehensive discussion of RICO and its history see *Haroco v. American National Bank & Trust Co.*, 747 F.2d 384 (7th Cir. 1984).

have failed to allege elements three and four. Additionally, Defendants argue that Plaintiffs have failed to allege an "investment injury" under § 1962(a); have failed to allege a "maintenance injury" under § 1962(b); have failed to allege a distinction between the RICO "person" and the RICO "enterprise" as required under § 1962(c); and have failed to plead a conspiracy claim under § 1962(d).

■ *1. Predicate Racketeering Activity.*—Defendants argue that counts one through four must be dismissed because Plaintiffs failed to allege with particularity facts constituting predicate racketeering activity. (R.Mot. Dismiss at 8.) Plaintiffs have alleged wire and mail fraud, 18 U.S.C. §§ 1341 & 1343, both of which are predicate acts under RICO. *See* 18 U.S.C. § 1961(1). Mail or wire fraud occurs when a person (1) intentionally participates (2) in a scheme (3) to defraud another or to obtain money or property and (4) uses mails or wires in furtherance of that scheme. *See Cesnik v. Edgewood Baptist Church,* 88 F.3d 902, 906 (11th Cir.1996), *cert. denied,* 519 U.S. 1110, 117 S.Ct. 946, 136 L.Ed.2d 834 (1997). Rule 9 of the Federal Rules of Civil Procedure requires that the circumstances constituting wire and mail fraud be stated with particularity. FED.R.CIV.P. 9(b). However, Rule 9 should be read together with Rule 8, which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a); *see Landry v. Air Line Pilots Ass'n Int'l, AFL—CIO,* 901 F.2d 404, 430 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

Plaintiffs allege that Defendants wanted to pass the cost of GEC's divestiture of A.B. Dick off on the distributors. Specifically, Plaintiffs allege that Defendants (1) induced the distributors to purchase hard-to-sell equipment so as to reduce A.B. Dick's inventory, (RICO stm't at 14–15); (2) eliminated without cause distributors with exclusive market access so that A.B. Dick could sell profitable inventory direct-

ly to consumers, (*id.* at 17–18); and (3) eliminated without cause distributors likely to impede disposal of A.B. Dick, (*id.* at 19).

Plaintiffs allege that Defendants recognized that A.B. Dick's value was based in part on the company's distribution network. To protect against losing distributors Plaintiffs allege that Defendants devised a scheme to divest themselves of A.B. Dick while purporting to have a long-term commitment to the distributors. Specifically, Plaintiffs allege that Defendants (1) expressed their commitment to a long-term relationship by referring to the distributors as "partners," (*id.* at 13–15); (2) pledged that they would continue to invest for the future and that they wanted to "grow the business," (*id.* at 12, 15–16); (3) promised to continue to support the distributors through advertising, customer support, and parts inventory, (*id.* at 12); and (4) misrepresented the reasons why it decided to terminate certain distributors, stating that such action was "not part of a larger plan," (*id.* at 13). Plaintiffs further allege that Defendants used the mails and phone lines to further this scheme, (*id.* at 6–11), and that the scheme was injurious, (*id.* at 26–27).

Taking these allegations as true, as the Court must in the context of a motion to dismiss, the Court finds that Plaintiffs have adequately stated a claim for mail and wire fraud. *See Landry,* 901 F.2d at 429 (finding a cause of action where it was alleged that defendants made misrepresentations, omissions, and false promises, via mail, and that such communications were injurious).

■ *2. Pattern of Racketeering Activity.*—Defendants argue that counts one through four must be dismissed because Plaintiffs have not alleged a pattern of racketeering activity. (R.Mot. Dismiss at 3–5.) To allege a pattern of racketeering activity a plaintiff must state "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *See H.J.,*

*Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1988). Defendants say Plaintiffs have failed to allege continuity, the second prong of a pattern of racketeering. (Tr. Hr'g at 10.)

In *H.J., Inc.* the Supreme Court said there are two ways to show that racketeering predicates amount to or pose a threat of continued criminal activity. The first is to show a closed period of racketeering conduct—that is, "a series of related predicates extending over a substantial period of time." *Id.* at 242, 109 S.Ct. at 2902. "Predicate acts extending over a few weeks or months ... do not satisfy this requirement." *Id.* The second way is to show an open-ended period of racketeering conduct that amounts to "a threat of continued racketeering activity." *Id.* One way this might be done is to allege that the racketeering predicates are a regular way of conducting defendant's ongoing legitimate business. *Id.* at 243, 109 S.Ct. at 2902–03. Plaintiffs argue that they have alleged both kinds of continuity, (*see* Resp.R.Mot. Dismiss at 2–6), a contention Defendants do not dispute. Instead, Defendants argue that Plaintiffs have failed to allege a pattern of racketeering activity because Defendants' disposal of A.B. Dick constitutes a "single transaction." (R.Mot. Dismiss at 3–5.)

In *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241, 244 (5th Cir. 1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989), the court held that a pattern of racketeering activity is not stated where the alleged acts of racketeering activity are "part and parcel of a single, discrete and otherwise lawful commercial transaction." In that case two companies merged, and the newly-consolidated enterprise sought to eliminate its superfluous distributors. *Id.* at 242. Plaintiff, one of the eliminated distributors, brought suit against the company, alleging that the merger and subsequent consolidation were achieved through numerous acts of fraud. *Id.* The court dismissed plaintiff's RICO claim for failure to allege a pattern of racketeering activity. *Id.* at 244. The court concluded that there was no allegation that Defendants posed a continuous threat because the predicate acts all related to the merger and "were necessary segments of an otherwise legitimate and singular commercial endeavor." *Id.*

Similarly, in *Word of Faith World Outreach Center Church, Inc. v. Sawyer,* 90 F.3d 118, 123 (5th Cir.1996), *cert. denied,* 520 U.S. 1117, 117 S.Ct. 1248, 137 L.Ed.2d 329 (1997), the Fifth Circuit found that plaintiff had failed to state a RICO claim where the predicate racketeering activity related to a "single, lawful endeavor." In that case, defendant television network and its personnel were accused of a wide variety of racketeering acts during the production of a television program concerning plaintiffs' church. *Id.* at 121. Defendant argued that plaintiffs failed to allege continued racketeering activity or its threat as required by the Supreme Court in *H.J., Inc. Id.* at 122. The Fifth Circuit agreed but without delving into *H.J., Inc.*'s "arcane concepts of closed-end or open-ended continuity under RICO." *Id.* at 123. Instead, the court, like *Delta Truck,* focused on the underlying activity to which the predicate acts were related. *Id.* The court noted that the alleged acts "were all part of a single, lawful endeavor—namely the production of television news reports concerning a particular subject." *Id.* Following *Delta Truck,* the court concluded that in cases where "the alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' " is not shown. *Id.*

Defendants, relying upon the above precedent, argue that the instant matter also involves a singular endeavor or plan— namely an allegedly fraudulent scheme to pass the cost of divestiture off on A.B. Dick distributors. (*See* R. Reply at 2.) The difference between the production of the television program in *Word of Faith*

and the merger in *Delta Truck* and Defendants' scheme, however, is that the latter, if it were carried out as alleged, is illegal.[7] *Cf. id.* at 118 (noting that the "alleged acts were all part of a single, *lawful* endeavor . . . .") (emphasis added). Moreover, unlike *Delta Truck*, the instant predicate racketeering activities do not relate a scheme to consummate a discrete transaction. Instead, Plaintiffs allege Defendants implemented a scheme that would facilitate a future transaction of a yet-unknown character. Indeed it was not until four years after the scheme was alleged to have begun that GEC decided to sell—as opposed to liquidate—A.B. Dick.

Furthermore, Defendants' single-transaction argument is of the kind the Supreme Court sought to avoid with its opinion in *H.J., Inc.* In that case the appeals court held that plaintiffs failed to state a claim under RICO because the alleged racketeering activity related to a "single scheme." *H.J., Inc.,* 492 U.S. at 234–35, 109 S.Ct. at 2898. A single scheme, the appeals court reasoned, cannot constitute a pattern of activity. *Id.* at 240, 109 S.Ct. at 2901. The Supreme Court rejected the appeals court's rationale. The Court opined that using multiple schemes as a proxy for a "pattern of racketeering activity" merely begs the question. *Id.* at 241 n. 3, 109 S.Ct. at 2901 n. 3 ("Nor does the multiple scheme approach to identifying continuing criminal conduct have the advantage of lessening the uncertainty inherent in RICO's pattern component, for 'scheme' is hardly a self-defining term.") (internal quotations omitted). Likewise, the various terms employed by Defendants, (*see, e.g.,* R. Reply at 2 ("single transaction"); *id.* ("single commercial endeavor"); R.Mot. Dismiss at 4 ("singular endeavor or plan")), are of little help in grappling with RICO's pattern requirement. Accordingly, the Court concludes

that Defendants' claim that Plaintiffs have failed to allege a pattern of racketeering activity is without merit.

■■■ *3. Investment Injury.*—Defendants argue that count two should be dismissed because Plaintiffs have not alleged the investment injury required to sustain a claim under § 1962(a). (R.Mot. Dismiss at 6.) Under this subsection plaintiffs must allege that the injury flowed "from the investment of racketeering income into the [RICO] enterprise." *See Crowe v. Henry,* 43 F.3d 198, 205 (5th Cir.1995). The investment injury must be distinct from injury caused by predicate racketeering activity. *See Glessner v. Kenny,* 952 F.2d 702, 708 (3d Cir.1991). Defendants argue that Plaintiffs in their amended complaint allege that the investment injury came from "reinvestment" in the enterprise. (Defs.' Supp. at 5.) Such an injury, Defendants say, does not give rise to a § 1962(a) claim. (*Id.* at 5–6, citing cases.) However, Plaintiffs' complaint must be read together with their RICO statement, *see McLaughlin v. Anderson,* 962 F.2d 187, 189 (2d Cir.1992); the latter alleges that the GEC's and GEC, Inc.'s "investment choices [in A.B. Dick, the RICO enterprise,] weakened Plaintiffs' position in the market and caused them substantial injury separate from the harm caused by fraud." (RICO stm't at 28.) Such an allegation is sufficient to state a claim under § 1962(a).

*4. Maintenance Injury.*—Defendants argue that count one should be dismissed because Plaintiffs have failed to allege an "acquisition or maintenance injury" as required under § 1962(b). (R.Mot. Dismiss at 5.) Under § 1962(b) a plaintiff must allege that his "injuries were proximately caused by a RICO person gaining or maintaining an interest in, or control of, the enterprise through a pattern of racketeering activity." *See Crowe,* 43 F.3d at 205.

---

7. At the hearing conducted by Judge Malone Defendants' counsel stated Plaintiffs do not attempt to show that the "transaction" in question—*i.e.,* the scheme to dispose of A.B. Dick—is unlawful. (*See* Tr. Hr'g at 13.) But

Plaintiffs do: *see, e.g.,* section one, *supra* (describing Plaintiffs' allegations of mail and wire fraud); section six, *infra* (describing Plaintiffs' conspiracy allegation).

Plaintiffs allege that GEC and GEC, Inc.—the RICO persons—took steps that enhanced or protected A.B. Dick's cash-in value and that such measures were injurious to Plaintiffs. (RICO stm't at 30–31.) Such an allegation is sufficient under § 1962(b).

■ *5. Enterprise–Person Distinction.*—Defendants argue that count three must be dismissed because Plaintiffs have failed to allege a distinction between the RICO enterprise and the RICO person as required under § 1962(c). (R.Mot. Dismiss at 6.) Section 1962(c) prohibits a person who is "employed by or associated with" an enterprise to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). The Fifth Circuit, like most circuits, has stated that the language "employed by or associated with" requires that the RICO person and the RICO enterprise be distinct. *See Landry,* 901 F.2d at 425; *see also Yellow Bus Lines, Inc. v. Local Union 639,* 883 F.2d 132, 139 (D.C.Cir.1989) ("Logic alone dictates that one entity may not serve as the enterprise and the person associated with it because ... you cannot associate with yourself.") (internal quotations omitted). Defendants contend that Plaintiffs have failed to allege such a distinction. Specifically, Defendants argue that A.B. Dick—the RICO enterprise—is not distinct from GEC and GEC, Inc.—the RICO persons—because a wholly owned subsidiary is not distinct from its parent company.

While the Fifth Circuit has not considered this issue, the Seventh Circuit has. In *Haroco v. American National Bank & Trust Co.,* 747 F.2d 384, 402 (7th Cir.1984), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), a case relied upon by Plaintiffs, the court held that a subsidiary and its parent company

are per se distinct under § 1962(c). *See Majchrowski v. Norwest Mortgage, Inc.,* 6 F.Supp.2d 946, 956 (N.D.Ill.1998) (noting that under *Haroco* "a subsidiary is presumptively (and perhaps conclusively) distinct from its parent"). *Haroco*'s holding, however, has been widely criticized,[8] and subsequent Seventh Circuit opinions have construed it narrowly. These post-*Haroco* cases have held that to make out a § 1962(c) violation where it is alleged that the parent company is the RICO person and its subsidiary the enterprise, plaintiff must allege that the parent and the subsidiary had distinct roles in the commission of the fraud complained of. For example, in *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 645–47 (7th Cir.1995), the court held that the RICO persons, three finance companies, were not distinct from the RICO enterprise, a group of entities which sold cars and had an in-fact association with the finance companies. The reason for the court's holding was that "[n]othing in the complaint implicated the enterprise entities in the alleged fraud or demonstrated that the defendants had somehow used the enterprise entities to commit the fraud." *See Majchrowski,* 6 F.Supp.2d at 955) (discussing *Richmond* ). Similarly, in *Emery v. American General Finance, Inc.,* 134 F.3d 1321, 1324 (7th Cir.) (Posner, C.J.), *cert. denied,* —— U.S. ——, 119 S.Ct. 57, 142 L.Ed.2d 44 (1998), the court held plaintiff failed to state a claim where it was alleged that the RICO person was a consumer lending company and the RICO enterprise its subsidiary. Like *Richmond,* the reason for dismissal was that the RICO person's alleged involvement in the scheme was limited to its status as the RICO enterprise's parent corporation.[9] *Id.*

■ In this case Plaintiffs allege "entirely distinct roles in the fraudulent activi-

---

8. *See, e.g., Brannon v. Boatmen's First Nat'l Bank of Okla.,* 153 F.3d 1144, 1147 (10th Cir.1998) ("Dramatically expanding RICO liability because of a business organization choice makes little sense from a policy perspective.").

9. Other courts have concurred with the Seventh Circuit's post-*Haroco* cases. *See, e.g., Brannon, supra* note 8, at 1147 (following *Emery* ).

ty" for GEC and GEC, Inc. and A.B. Dick. (Resp.R.Mot. Dismiss at 8.) Specifically, Plaintiffs allege that A.B. Dick was used to make "most of the misrepresentations and fraudulent omissions toward distributors...." (RICO stm't at 25.) Such an allegation is sufficient to withstand a motion to dismiss. *See id.* (concluding that an allegation that the use of subsidiaries "made it easier to commit or conceal the fraud of which the plaintiff complains" is required under § 1962(c)); *Majchrowski*, 6 F.Supp.2d at 957 (finding a cause of action where it was alleged that the subsidiary had "some part in masking or facilitating" the scheme).

*6. Conspiracy.*—Defendants last argument with respect to RICO is that count four—conspiracy in violation of § 1962(d)—must be dismissed because Plaintiffs failed to state a claim under one of the other RICO subsections. Under § 1962(d) it is "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Of course this argument relied upon the Court finding that Plaintiffs failed to state a cause of action under one of the other RICO subsections. The Court has not so found, *see* sections 1–5, *supra,* and more, Plaintiffs have alleged Defendants conspired to violated the other RICO subsections. Accordingly, Plaintiffs have stated a cause of action for conspiracy under § 1962(d).

### B. Count 11: Common Law Fraud.

■ Defendants argue count 11 should be dismissed because Plaintiffs have failed to state a cause of action for common law fraud. To state a cause of action for fraud under Illinois law plaintiff must allege that (1) defendant made a false statement of material fact; (2) which he knew or believed to be false; (3) with intent to induce plaintiff to act in reliance on statement;

(4) plaintiff did, in fact, act in reasonable reliance on that false statement; and (5) plaintiff was injured as a result. *See GreatAmerica Leasing Corp. v. Cozzi Iron & Metal, Inc.*, 76 F.Supp.2d 875, 878 (N.D.Ill.1999) (citing *Los Amigos Supermarket, Inc. v. Metropolitan Bank and Trust Co.*, 306 Ill.App.3d 115, 713 N.E.2d 686, 694–95, 239 Ill.Dec. 155 (1999)). In light of the aforementioned allegations, *see* Part II.A., *supra,* the Court concludes Plaintiffs have stated a cause of action for common law fraud.

### III.

### Personal Jurisdiction.

■ Defendants ask to the Court to dismiss this matter pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.[10] As a general rule, plaintiffs are required to make out a prima facie case for personal jurisdiction. *See Hargrave v. Fibreboard,* 710 F.2d 1154, 1159 (5th Cir.1983). In order for a district court to exercise personal jurisdiction over a defendant plaintiff must show (1) adequate notice to defendant; (2) proper statutory service of summons on defendant; and (3) a constitutionally sufficient relationship between defendant and the forum. *See Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). Subdivision (k)(2) of Rule 4 of the Federal Rules of Civil Procedure says that in actions on a federal claim a federal summons may be served on defendants not subject to personal jurisdiction in the courts of any state. FED.R.CIV.P. 4(k)(2); *see* 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1124 (2d ed. 1987 & Supp.1999). In such a situation the defendant need have only minimum contacts with the nation as

---

**10.** With respect to Defendants' personal jurisdiction arguments the Court had the benefit of Part I of Defendant GEC's original motion to dismiss (no. 7), Plaintiffs' memorandum concerning personal jurisdiction issues (no.

44) and supplement thereto (Pls.' Supp., no. 66), and Defendants' response to Plaintiffs' supplement (no. 67), in addition to the filings noted elsewhere in this opinion.

a whole to satisfy the required constitutional relationship. *Id.*

 Here plaintiffs have brought a federal claim, and it is not disputed that GEC, a foreign corporation, is not amenable to service in any state. Furthermore, the Court is satisfied that GEC has sufficient national contacts to satisfy due process requirements. (*See, e.g.,* Pls.' Supp. at Ex. B (GEC press release announcing the company's acquisition of RELTEC, an Ohio corporation), at Ex. C (GEC press release announcing the company's acquisition of FORE Systems, Inc., a Pennsylvania corporation).) Accordingly, the Court concludes that it has personal jurisdiction over GEC.

## IV.

### Order.

For all of the foregoing reasons it is hereby ORDERED that Defendants' Renewed Motion to Dismiss (no. 63) is DENIED.