**In re JACKSON NATIONAL LIFE
INSURANCE COMPANY
PREMIUM LITIGATION**

No. MDL 1122.

United States District Court,
W.D. Michigan,
Southern Division.

July 5, 2000.

Stephen L. Hubbard, Hubbard & Biederman, LLP, Dallas, TX, for plaintiff.

Joel Feldman, Sachnoff & Weaver, Ltd., Chicago, IL, for defendant.

## OPINION OF THE COURT ON DEFENDANT JACKSON NATIONAL'S MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS ASSERTED IN THE CONSOLIDATED AMENDED COMPLAINT

McKEAGUE, District Judge.

In this multi-district litigation, plaintiffs are purchasers of, or persons beneficially interested in, life insurance policies underwritten and sold by defendant Jackson National Life Insurance Company ("Jackson National"). Plaintiffs allege they suffered loss due to Jackson National's misrepresentations. The consolidated amended complaint expressly asserts the claims of individual plaintiffs from Texas, Ohio, Arizona, Oklahoma, California and Illinois. Named defendants are Jackson National; its wholly owned subsidiary, Jackson National Life Insurance Company of Michigan; and their holding company, Brooke Life Insurance Company. Michigan is the principal place of business for all three defendants, collectively referred to herein as "Jackson National." Plaintiffs seek compensatory and injunctive relief, asserting claims for fraud, breach of fiduciary

duty, negligent misrepresentation, negligent supervision of sales agents, breach of contract, unjust enrichment, violation of Michigan's Consumer Protection Act, and violation of Michigan's Pricing and Advertising Act.

On September 30, 1997, the Court dismissed plaintiffs' claims under the Michigan Consumer Protection Act. On October 22, 1998, the Court denied plaintiffs' motion for certification of a nationwide class. Now before the Court is Jackson National's motion for summary judgment on all remaining claims. For the following reasons, the Court concludes the motion must be granted in part and denied in part.

## I. FACTUAL BACKGROUND

Plaintiffs allege they were induced to purchase interest sensitive whole-life insurance policies by false, incomplete and misleading sales representations and information disseminated by Jackson National. More specifically, they allege they paid large lump sum premiums or large fixed premiums for a number of years in reliance upon representations that future premiums would "vanish" as interest and other values accumulated in the policy and became sufficient to pay remaining premiums. In the 1990s, when interest rates declined and the amounts paid into the policies failed to produce sufficient income to pay remaining premiums, plaintiffs were advised that additional out-of-pocket premium payments were required to maintain the policies. Consequently, plaintiffs allege they have been faced with the choice of either incurring the unexpected expense of continuing premium payments or surrendering the policies at substantial loss. They pray for compensatory and punitive or exemplary damages, injunctive relief

enjoining Jackson National's deceptive practices and requiring Jackson National to pay for the costs of obtaining life insurance conforming to the sales representations, and an order imposing a constructive trust upon monies wrongfully acquired by Jackson National.

### A. Paul Christiansen

Plaintiff Paul Christiansen is a resident of California.[1] In 1984, he converted a Jackson National term policy insuring the life of his brother to a $100,000 Ultimate II life insurance policy. Christiansen purportedly relied on Jackson National brochures, a vanishing premium illustration, and oral representations of the sales broker, Robert Greenup, in deciding to purchase the Ultimate II policy. Based on these communications, plaintiff Christiansen allegedly understood that, irrespective of the interest crediting rate approved by Jackson National, his obligation to make continuing annual premium payments of $838—either out-of-pocket or out of the policy's accumulated cash value—would vanish after four to nine years. It appears Christiansen paid premiums out-of-pocket until 1992. Thereafter, and continuing to the present, he has elected to have the annual premium withdrawn from the policy's accumulated cash value. It has been more than nine years since he purchased the policy and the premiums have still not "vanished" in the way Christiansen understood they would.

### B. The Everetts

Plaintiffs Patricia Everett and Charles J. Everett, M.D., individually, and Ralph P. Higgins, Trustee of the Everett Family Irrevocable Trust, are residents of Ohio.[2] In March 1990, the Everett Trust purchased a $1,000,000 Jackson National Last

---

1. Christiansen commenced his action against Jackson National in the Southern District of California. The Court has ruled his claims are governed by California law. See Opinion on Jackson National's Motion to Dismiss, September 30, 1997, docket #36, pp. 6–7.

2. Though "the Everetts" commenced their action in the Northern District of Texas, the Court has ruled their claims are governed by the law of Ohio, where the alleged misrepresentations were made, the policy purchased, and the wrongs occurred. Opinion on Jackson National's Motion to Dismiss, docket #36, p. 7.

Survivor Ultimate policy insuring the lives of Dr. and Mrs. Everett. Relying on illustrations and representations of sales agent Jack Stitt, the Everetts believed that after six annual premium payments of $8,870, the premium would vanish. After having made seven annual premium payments out-of-pocket, they have since elected to have premiums paid from the policy's accumulated cash value. They allege the continuing obligation to pay premiums beyond six years is contrary to the agent's explanation of the policy; who, although he made no guarantee, led them to believe the likelihood of the need for a seventh payment was remote.

### C. The Fleischers

Jerome Fleischer and his wife Harriet Fleischer, as well as Stuart Morse and George Williams, Trustees of the Fleischer Liquidity Trust II, are residents of Texas.[3] The Fleischers purchased a $500,000 Last Survivor Ultimate policy in 1990, in reliance upon representations made by sales broker Gary Gray, who showed them several illustrations. They understood that if they made premium payments (in the quarterly amount of $2,423.30) for seven or eight years, the premium would vanish. The Fleischers made the quarterly payments until 1995, when they surrendered the policy for its cash value. The decision to surrender the policy appears to have been precipitated by two circumstances: first, miscommunication concerning premium payments; and second, the Fleischers' concern that the premium would not actually vanish after seven or eight years as expected.

### D. The Blisses

Plaintiff Roy E. Bliss and his wife Nellie A. Bliss are residents of Arizona.[4] Their son Roy Lee Bliss is Trustee of the Bliss Irrevocable Trust, which holds the beneficial interest in a Jackson National Last Survivor Ultimate policy purchased by the Blisses in 1990. In reliance upon policy illustrations and other documents, as well as representations of sales agent John Fattig, the Blisses allegedly understood that a single premium payment of $94,887 would buy them a death benefit of $500,000 and that no further premium payment would ever be required. In 1995, the Blisses were shocked to receive notice that additional premium payments were required to maintain their policy. Since 1997, premiums have been paid from the policy's accumulated cash value. The Blisses allege they did not receive the policy they were promised.

### E. Gerald Zaidman

Plaintiff Gerald Zaidman is the Trustee of the Harry A. Young, Jr. Irrevocable Trust and a resident of Illinois.[5] The Young Trust is the owner of two $150,000 Ultimate II whole life policies purchased by Harry A. Young, Jr. in 1990 and 1993. Young purchased the policies in reliance upon representations contained in Jackson National illustrations which were explained by sales broker Robert Szarvas. Young understood that he would make annual premium payments (of $5,968 on the first policy and $5,669 on the second) for seven years before the premiums would vanish. Young made seven annual premium payments out-of-pocket on the 1990 policy before electing in 1997 to have the premium paid from the policy's accumulated cash value. On the 1993 policy, he has made six annual premium payments out-of-pocket. The obligation to pay continuing premiums beyond seven years, Zaidman maintains, is

3. The Fleischers' claims are governed by the law of Texas, where the subject policy was purchased. Opinion on Motion to Dismiss, docket # 36, p. 7.

4. The Blisses' claims are governed by the law of Arizona, where the subject policy was purchased. Opinion on Motion to Dismiss, docket # 36, p. 7.

5. Zaidman commenced his action in this Court, but the claims are governed by the law of Illinois, where the subject policies were purchased. Opinion on Motion to Dismiss, docket # 36, pp. 5–6.

contrary to Jackson National's representations.

## II. ANALYSIS

### A. Summary Judgment Standard

Jackson National has moved for summary judgment on all of plaintiffs' claims. The motion requires the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. Fed.R.Civ.P. 56(c). See generally *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). That is, the Court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party identifies elements of a claim or defense which it believes are not supported by evidence, the nonmovant must present affirmative evidence tending to show a genuine dispute of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

The substantive law identifies which facts are "material." Facts are "material" only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A complete failure of proof concerning an essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. Breach of Contract

#### 1. Parol Evidence Rule

Jackson National first challenges plaintiffs' breach of contract claims. Jackson National contends the vanishing premium promises alleged by the plaintiffs are at odds with the express terms of each of the plaintiffs' policies. The cover page of each policy clearly indicates the stated annual premium is payable for the life of the insured. Each policy also includes an option, exercised by many of the plaintiffs, allowing the policyholder to use the policy's accumulated cash value to pay the annual premium as follows:

> OPTION WITH RESPECT TO PREMIUM PAYMENT On any policy anniversary, if the Actual Cash Value is in excess of the Guaranteed Cash Values as shown, and provided there is no indebtedness, the Owner may elect not to pay the annual premium and instead to use all or part of such excess in lieu of paying the total annual premium then due by so notifying the Company by written notice prior to the end of the grace period. In such event, the benefits will be continued in force until the next anniversary without the payment of premiums by deducting the premium from the Value Accumulation. This premium will then be applied according to the Value Accumulation section. Should the excess not be sufficient to pay the total annual premium then due, the Owner may pay in cash the difference between such excess and the total annual premium then due within the grace period provided. The excess will be deducted from the Value Accumulation. Such excess together with the cash pay-

ment will be applied according to the Value Accumulation section.

This option is referred to as the "ORPP Provision" or the "vanish option." It may be exercised only if and to the extent that the policy's actual accumulated cash value exceeds the guaranteed cash value. To the extent that any such excess is insufficient to cover the annual premium, the remainder must be paid in cash to maintain the policy.

Insofar as plaintiffs' claims are based on alleged representations that their obligation to make annual cash premium payments would "vanish" after a certain period of time, irrespective of the policy's actual accumulated cash value, such representations are thus said to be contrary to the express terms of the policies. Moreover, Jackson National argues, each subject policy represents the only written agreement between the parties and by its very terms represents the entirety of the agreement. Each policy includes the following provision:

> **CONSIDERATION: ENTIRE CONTRACT** The consideration for issuing this Policy is the application and the payment of the first premium. This Policy and the application, a copy of which is attached and made a part of this policy, constitute the entire contract between the parties. . . . .

The inclusion of this integration clause in each policy is said to demonstrate the parties' intention that the policy and related application embody the entire agreement between them.

■ In the face of such an integration clause, Jackson National, argues, parol evidence—that is, evidence of pre-purchase representations and sales illustrations—is not admissible to contradict or vary the terms of the written policy. Absent such parol evidence, Jackson National contends, plaintiffs cannot demonstrate the existence of a genuine issue of material fact on their breach of contract claims.

In response, plaintiffs argue first that, despite appearances, their policies should not be deemed fully integrated. They argue the policy terms are embodied in non-negotiable pre-printed forms furnished to them only after they had agreed to purchase the policies and had paid the first premium. Under these circumstances, plaintiffs contend, the integration clause contained in each policy should not be deemed to preclude evidence of agreements earlier reached by the parties at the time of purchase. Yet, the law in most of the relevant jurisdictions provides that determining whether a contract is integrated depends on examination of the contract. See *Airs Int'l, Inc. v. Perfect Scents Distributions, Ltd.*, 902 F.Supp. 1141, 1145–46 (N.D.Cal.1995) (under California law, express integration clause precludes evidence of prior or contemporaneous oral agreement to contradict terms of subsequent written agreement); *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St.3d 271, 638 N.E.2d 572, 576 (1994) (under Ohio law, integration questions must be determined from the four corners of the document itself); *R. Ready Productions, Inc. v. Cantrell*, 85 F.Supp.2d 672, 694 (S.D.Tex.2000) (under Texas law, effect of integration clause is determined by intent of parties as expressed in their contract and self-serving parol evidence cannot be used to vary or contradict clear integration clause); *J & B Steel Contractors, Inc. v. Iber & Sons, Inc.*, 162 Ill.2d 265, 205 Ill. Dec. 98, 642 N.E.2d 1215, 1218–19 (1994) (under Illinois law, "only the subject writing may be considered to determine the integration question").

Where the integration clause is as clear and unambiguous as it is in the subject policies, it is controlling; extrinsic evidence plays no role. The Court concludes, therefore, applying the law of California, Ohio, Texas and Illinois, that the policies placed at issue by Zaidman, the Everetts, Christiansen and the Fleischers are fully integrated. It follows that parol evidence is not admissible to vary or contradict the terms of the subject policies.

These plaintiffs insist, however, that the parol evidence they proffer does not contradict the policy terms, but explains them, a purpose for which parol evidence is admissible. Plaintiffs do not dispute their obligation to make annual premium payments for the life of the insured. They would present evidence of Jackson National's representations, however, to the effect that after a defined number of premium payments, the annual premiums would no longer be paid out-of-pocket, but out of the policy's accumulated cash value. In support, they cite *Parkhill v. Minnesota Mutual Life Ins. Co.,* 995 F.Supp. 983, 990 (D.Minn.1998), where the court allowed similar parol evidence to create a genuine fact issue concerning a breach of contract claim in a vanishing premium case.

*Parkhill* is distinguishable. In *Parkhill,* the policy did not indicate the source of premium payments, thereby creating an ambiguity which rendered parol evidence admissible to clarify the parties' intent. *Id.* at 990. Here, the ORPP provision specifically identifies the policyholder's options regarding the source of premium payments and expressly conditions exercise of the option upon the sufficiency of the actual cash value accumulation. Evidence that the vanish option was not conditioned upon accumulated cash value, but rather upon prior payment of a stated number of annual premiums, would directly conflict with the express terms of the policy. It would not merely clarify or explain the policy language, but would evidence an agreement materially different from that embodied in the policy. The parol evidence rule precludes admission of such evidence.[6]

■ A different result obtains, however, with respect to the Blisses. Construction of their policy and integration clause is governed by Arizona law. Under Arizona law, "evidence on surrounding circumstances, including negotiation, prior understandings, subsequent conduct and the like, is taken to determine the parties' intent with regard to integration of the agreement," notwithstanding an express integration clause. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388, 398 (1984) (in banc). See also *Anderson v. Preferred Stock Food Markets, Inc.,* 175 Ariz. 208, 854 P.2d 1194, 1197 (1993).

The Blisses contend, therefore, that the Court must consider evidence of representations made by or attributable to Jackson National to the effect that theirs was a "single premium policy," and that, after an initial lump sum payment of $94,887, no additional payments would be required to maintain the policy. Such representations were allegedly made directly by the sales broker John Fattig and are said to have been corroborated by Jackson National's approval of the Blisses' "single payment" application and Jackson National's acceptance of their "Single Premium Life Insurance Rider" request form, both of which became parts of the contract. Fattig's representations were also corroborated, the Blisses contend, by a Jackson National brochure entitled "Jackson National Life's Single and Annual Life Insurance (Drop-in) Riders." The brochure describes the single premium rider as **"vanishing the premium immediately,"** such that "the policy owner pays **no more direct premiums."** (Emphasis in original.)

■ The Court agrees with the Blisses. Despite their policy's integration clause, the extrinsic evidence submitted is properly considered under Arizona law in determining the meaning of the ORPP provision in what purports to be, by virtue of the incorporated application and single premium rider, a single premium policy. In light of the latent ambiguities in the terms of their policy, the extrinsic evidence creates genuine issues of material fact that

---

**6.** The Court acknowledges that the parol evidence rule may not bar extrinsic evidence of fraud in the inducement. Plaintiffs' fraud claims are distinct from the breach of contract claims and are addressed below.

preclude award of summary judgment to Jackson National on the Blisses' breach of contract claim.

## 2. Reasonable Expectation Doctrine

The remaining plaintiffs urge the Court to reach the same conclusion with respect to their breach of contract claims, despite the parol evidence rule's preclusion of extrinsic evidence. They ask the Court to apply the "reasonable expectation doctrine" to enforce the policies in accordance with their understandings and expectations.

The reasonable expectation doctrine has grown out of recognition of the disparity in bargaining power between insurance companies and those who seek insurance. *Atwater Creamery Co. v. Western Nat'l Mutual Ins. Co.*, 366 N.W.2d 271, 277 (Minn. 1985). Because the ordinary lay person may lack the skill to read and understand insurance policies and may rely on the advice of others to meet his or her needs, some courts have decided to honor the objectively reasonable expectations of the insured regarding the terms of the insurance contract even though painstaking study of the policy provisions would have negated those expectations. *Id.*

The reasonable expectation doctrine has not, however, been adopted in Ohio, Texas or Illinois. See *Longaberger Co. v. U.S. Fidelity & Guar. Co.*, 31 F.Supp.2d 595, 602–03 (S.D.Ohio 1998), *aff'd*, 201 F.3d 441, 1999 WL 1252874 (6th Cir.1999); *Constitution State Ins. Co. v. Iso–Tex, Inc.*, 61 F.3d 405, 409–10 n. 4 (5th Cir.1995); *Federal Deposit Ins. Corp. v. Zaborac*, 773 F.Supp. 137, 148 (C.D.Ill. 1991). In California, the doctrine applies only where there is an ambiguity in the policy language. *Hallmark Ins. Co., Inc. v. Superior Court of Los Angeles County*, 201 Cal.App.3d 1014, 1019, 247 Cal.Rptr. 638 (1988). Because plaintiff Christiansen

has not identified such an ambiguity in the express terms of his policy, the reasonable expectation doctrine may not be invoked to vary or contradict those terms.

Accordingly, the Court concludes the reasonable expectation doctrine is not available to any of the remaining plaintiffs, the Everetts, the Fleischers, Zaidman, or Christiansen. The Court has also concluded that the parol evidence rule bars introduction of extrinsic evidence by them in support of their breach of contract claims. These four sets of plaintiffs having thus failed to adduce evidence tending to show that Jackson National breached the express terms of their fully integrated insurance policies, it is apparent that Jackson National is entitled to summary judgment on their breach of contract claims. For the reasons stated above, however, Jackson National's motion for summary judgment on the Blisses' breach of contract claim will be denied.

## C. Limitations Defense

Jackson National challenges all of plaintiffs' tort claims as untimely. Jackson National contends the alleged misrepresentations occurred at the time the subject policies were purchased. Further, Jackson National contends, to the extent plaintiffs were influenced by representations inconsistent with the actual terms of their policies, they were invariably put on notice of any discrepancy when they received their policies. Plaintiffs' causes of action are therefore said to have accrued upon their receipt of the policies, between five and eleven years prior to the filing of their respective suits.

The Court has previously ruled that the statutes of limitations of the states in which these consolidated actions were commenced, i.e., California, Texas, and Michigan, apply. Opinion on Jackson National's motion to dismiss, September 30, 1997, docket #36, p. 19.[7] Plaintiffs rely

---

**7.** In its present briefing, Jackson National questions this ruling, arguing the post-transfer consolidation of plaintiffs' claims in the

consolidated amended complaint had the effect of superseding plaintiff's original complaints and rendering Michigan the forum

on the discovery rule in arguing their claims were timely filed.

### 1. Paul Christiansen

Plaintiff Christiansen's tort claims are governed by the California statue of limitations. The relevant periods of limitation, the parties agree, are as follows:

fraud—3 years;

negligent misrepresentation—2 years;

negligent supervision—1 year;

breach of fiduciary duty—4 years.[8]

Christiansen contends all his claims accrued within the applicable time periods before his complaint was filed, on March 14, 1996, because it was only during the preceding year that he actually discovered Jackson National's wrongdoing.

■ Under California law, a cause of action is deemed to have accrued when a plaintiff has actual knowledge of wrongdoing or reason to suspect wrongdoing based on notice of circumstances that would put a reasonable person "on inquiry." *O'Connor v. Boeing North American, Inc.*, 92 F.Supp.2d 1026, 1036 (C.D.Cal.2000). If cause for suspicion exists, the plaintiff cannot simply wait for facts supporting the claim to develop, but must go find the facts and file suit if he finds them. *Id.; Norgart v. Upjohn Co.*, 21 Cal.4th 383, 398, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999).

Jackson National disputes Christiansen's contention regarding the date of his actual knowledge of alleged wrongdoing. Yet, even assuming a fact issue is presented on this point, Jackson National maintains Christiansen clearly had cause for suspicion when he received his policy in September 1984. That is when, Jackson National contends, the relevant periods of limitation began running.

■ Indeed, an insured has the duty under California law to read his policy and is charged with knowledge of its terms. *State Farm Mutual Auto. Ins. Co. v. Khoe*, 884 F.2d 401, 408 (9th Cir.1989); *National Automobile and Casualty Ins. Co. v. Stewart*, 223 Cal.App.3d 452, 458, 272 Cal.Rptr. 625 (1990); *Cal–Farm Ins. Co. v. TAC Exterminators*, 172 Cal.App.3d 564, 579, 218 Cal.Rptr. 407 (1985). This duty may be relaxed in the insurance context and may be insufficient to bind an insured to unusual or unfair language. *State Farm*, 884 F.2d at 408.

■ Here, while a layperson might not be expected to understand the precise meaning of the ORPP provision in all respects, the provision clearly indicates that exercise of the vanish option is conditioned upon the sufficiency of the actual cash value accumulation. In the event there is insufficient cash value accumulation, the provision clearly provides that additional cash premium payments will be required. Nothing in the express terms of the ORPP provision or any other provision of the policy even arguably supports an understanding that the obligation to make premium payments would automatically and finally vanish after a certain number of premium payments.

Nothing in the terms is so unusual or unfair in its relevant import as to warrant excusing Christiansen from the duty to read the terms reasonably and find in them cause for inquiry; that is, cause for suspicion that they are inconsistent with oral representations allegedly made by sales broker Robert Greenup. Although

---

state. Jackson National therefore contends Michigan's statutes of limitations should be applied to all claims.

Jackson National has not moved the Court for relief from the prior ruling. In fact, Jackson National concedes it is of little practical consequence to the timeliness question if the Court applies the Texas and California statutes of limitations to some of the claims.

Under these circumstances, and considering that the impact of the consolidation of plaintiffs' claims in one complaint is far from clear, the Court remains unpersuaded to revisit sua sponte a ruling that has been the law of the case for over two years.

**8.** See Cal.Civ.Proc.Code §§ 338(d), 339(1), 340(3), 343, respectively.

Christiansen did not feel the sting of unexpected premium payments until some years later, with receipt of his policy, he was put on notice that the policy received was different from that for which he had bargained. Having thus received notice of circumstances giving rise to cause for suspicion of wrongdoing, the respective periods of limitation are deemed to have begun running upon Christiansen's receipt of the policy in September 1984. It was then incumbent upon Christiansen to make a reasonable and timely investigation and satisfy himself as to whether the nature of the policy and his premium obligations had been misrepresented. *O'Connor*, 92 F.Supp.2d at 1036. This he appears not to have done. Christiansen has presented no evidence to suggest he inquired about the true nature of the policy and was somehow thwarted in the attempt by Jackson National. It is thus apparent that his tort claims, filed some eleven years after receipt of the policy, are untimely.

■ Christiansen maintains that whether and when he may be deemed to have had actual or constructive knowledge of the wrongdoing presents a question of fact that precludes summary judgment. Yet, while determination of a statute of limitations defense may typically present a question of fact, summary judgment is proper if the Court can draw only one legitimate inference from uncontradicted evidence about the issue. *San Francisco Unified School Dist. v. W.R. Grace & Co.*, 37 Cal. App.4th 1318, 1325–26, 44 Cal.Rptr.2d 305 (1995). Here, plaintiff Christiansen, who bears the burden of showing the discovery rule applies to his claims, see *O'Connor*, 92 F.Supp.2d at 1037, has failed to adduce evidence upon which a reasonable jury could conclude that he was not put on inquiry notice of wrongdoing upon receipt of his policy, which he is presumed to have read, in September 1984.

On this record, therefore, there is no genuine issue of material fact. Christiansen's tort claims are time-barred.

### 2. The "Texas Plaintiffs"

The Everetts, the Fleischers and the Blisses all commenced their action against Jackson National in Texas. The Texas statutes of limitations therefore apply to their claims and provide the following periods of limitations:

fraud—4 years;

negligent misrepresentation—2 years;

negligent supervision—2 years;

breach of fiduciary duty—2 years.[9]

■ Under Texas law, a defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish the defense. *Velsicol Chemical Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997). If, as here, the discovery rule is asserted as an exception, the defendant must negate the exception as well. *Id.* Specifically, the defendant must (1) prove when the cause of action accrued and (2) negate the discovery rule by proving there is no genuine issue of fact concerning when the plaintiff discovered or should have discovered the nature of the injury. *Hendricks v. Thornton*, 973 S.W.2d 348, 365–66 (Tex.App.—Beaumont 1998). If the defendant meets these requirements, plaintiff must then adduce evidence raising a fact issue in avoidance of the defense. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

■ The discovery rule applies if "(1) the injury is inherently undiscoverable; and (2) the evidence of the injury is objectively verifiable." *Id.* An injury is "inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex.1996). An injury is "objectively verifiable if the presence of injury and the producing wrongful act cannot be disputed, and the facts upon which liability is assert-

9. Tex.Civ.Prac. & Rev.Code Ann. §§ 16.003, 16.004(a)(3).

ed are demonstrated by direct physical evidence." *Hay v. Shell Oil Co.*, 986 S.W.2d 772, 777 (Tex.App.—Corpus Christi 1999).

■ Review of Texas case law persuades the Court that the tortious injuries here alleged are properly deemed "inherently undiscoverable" and "objectively verifiable." Where plaintiffs allegedly purchased policies based on illustrations of projected performance and on sales broker representations to the effect that the policies would be "paid-up" after a stated number of premium payments; and where the policies were not made available to them until some weeks or months after they had purchased the policies and paid the initial premium; and where the failure of the policies to perform as represented would not become apparent until several years later when unexpected additional premium payments were required, the alleged misrepresentations can fairly be characterized as "unlikely to be discovered within the prescribed period despite due diligence"—especially where, as seen below, Texas law imposes no duty on the insured to read his policy. See *Murphy v. Campbell*, 964 S.W.2d 265, 270–71 (Tex. 1997) (injury resulting from reliance on expert advice is inherently undiscoverable); *Hendricks*, 973 at 364–65 (same). Further, the alleged injury is "objectively verifiable" in that Jackson National undisputedly issued notice of additional premium requirements beyond those allegedly represented to be required. See *Murphy*, 964 S.W.2d at 271 (injury in the form of tax liability flowing from faulty advice is objectively verifiable). Hence the discovery rule may apply to these tort claims of the "Texas plaintiffs."

(a) **The Everetts**

Jackson National contends the Everetts should have discovered the nature of the alleged wrongdoing and injury when their policy issued, on March 21, 1990. Because they did not file suit until March 21, 1996,

Jackson National contends all their tort claims are untimely.

Although the record is not absolutely clear, it appears the Everetts did not actually receive a copy of the policy until some unidentified time in 1994. C. Everett Dep. at pp. 58–59. The policy was provided to them by Ralph Higgins, Trustee of the Everett Family Irrevocable Trust, after they had first been advised, sometime during the period January to May 1994, that more than six annual premium payments would be required to maintain their policy. There is no evidence they had read the ORPP provision or any other provision of the policy prior to that time.

■ Under Texas law, an insured is presumed to know the contents of his or her policy. *Colonial Savings Ass'n v. Taylor*, 544 S.W.2d 116, 119 (Tex.1976); *Fort Worth Mortgage Corp. v. Abercrombie*, 835 S.W.2d 262, 265 (Tex.App.—Houston 1992). The presumption can be overcome, however, by proof that the insured did not know the contents. *Colonial Savings*, 544 S.W.2d at 119; *Fort Worth*, 835 S.W.2d at 265.

■ Here, the deposition testimony of both Charles Everett and Patricia Everett demonstrates they had no actual knowledge of the contents of their policy until sometime in 1994. Not until then can they be charged even with constructive knowledge, based on the policy contents, of grounds to suspect misrepresentation.

Sometime after January 1994, but before they received the policy, the Everetts had been advised of the need to make continuing payments beyond the six annual payments. This information put them on notice of possible wrongdoing and their causes of action may then be deemed to have accrued. If this notice was received prior to March 21, 1994, the Everetts' negligence and breach of fiduciary duty claims would be barred by the applicable statute of limitations. On the present record, however, this fact has not been established. Jackson National has failed to car-

ry its burden of negating the discovery rule by demonstrating there is no question but that the Everetts discovered or should have discovered the alleged wrongdoing more than two years prior to filing suit. There being a genuine issue of material fact, Jackson National's motion for summary judgment on the Everetts' tort claims based on the limitations defense must be denied.

### (b) The Fleischers

The Fleischers' policy was issued on December 28, 1990. They filed suit on March 21, 1996. They had received notice in early 1995 that their policy had been converted, due to nonpayment of premiums, from the $500,000 Ultimate policy they had purchased to an $85,000 paid-up policy. Jerome Fleischer asked a family friend who was an insurance agent, Dale Greenblatt, for help in identifying and resolving the problem. In the course of determining that the Fleischers had failed to pay a number of past due premiums because they had not received the premium notices, Greenblatt also advised them that their vanishing premium policy probably would not have performed as well as they had expected. Following several communications between the parties over the next several months, the Fleischers decided to surrender the policy. They made this decision despite Jackson National's offer in December 1995 to restore their $500,000 Ultimate policy under the terms which the Fleischers believed they had originally agreed to when they purchased the policy. That is, Jackson National offered them a policy consistent with sales agent Gary Gray's alleged representation that after seven annual premium payments, the premium would "vanish," i.e., be paid from the policy's cash value accumulation and, if this were insufficient, by Jackson National. Jerome Fleischer rejected the offer essentially because he felt he had been treated unfairly and he "no longer wanted to do business" with Jackson National. J. Fleischer Dep. p. 100.

The record adequately demonstrates that the Fleischers had not read their policy and were not familiar with its contents. They cannot therefore be deemed to have been put on notice of the discrepancy between any alleged representations and the actual terms of the policy by their receipt of the policy. Still, the discovery rule is properly invoked only if the alleged injury is both inherently undiscoverable and objectively verifiable.

■ For the reasons stated above, in connection with the Everetts' claims, the Court is satisfied that the Fleischers' injury was inherently undiscoverable. There appears to be no evidence, however, that their injury is objectively verifiable, no direct physical evidence of injury resulting from the alleged misrepresentations. Jackson National has not only not given notice of additional premium requirements, but has offered the Fleischers a policy conforming to the alleged misrepresentations. The Fleischers' anticipation, based on Greenblatt's opinion, that their Ultimate policy, even if restored, would not perform as represented, appears to have been conclusively refuted.

On this point there is no genuine issue of material fact. Absent evidence of objective verifiability, the discovery rule is not applicable. Jackson National has carried its burden of negating the discovery rule. If the discovery rule does not apply, the "legal injury" rule does: "[A] cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d at 4. Under this rule, the Fleischers' legal injury occurred when they were induced by misrepresentations to purchase a policy different from what they intended to purchase. Their causes of action therefore accrued in December 1990, more than five years prior to their commencement of this action. It follows that all four of their tort claims are time-barred.

### (c) The Blisses

The Blisses' Ultimate policy was issued on August 28, 1990. Their suit was filed on March 21, 1996. In the meantime, Roy E. Bliss received various communications from Jackson National that caused him to question whether the policy conformed to his expectations.

He had intended to purchase a single premium policy, and allegedly understood, based on representations of sales broker Fattig, that he would acquire a $500,000 fully paid policy in exchange for a single premium payment of $94,887. Consistent with this expectation, the Blisses' application expressly provided that the mode of premium payment would be "single payment," not annually, semi-annually, quarterly or monthly. By the very terms of the policy, this application, approved by Jackson National and attached to the policy, became a part of the policy. Their expectation was further reinforced by Jackson National's later approval of their single premium rider request. The request form had been prepared by Jackson National and sent to the Blisses for signing and return. The rider expressly provides that upon approval it becomes part of the policy.

Yet, other terms in the policy the Blisses received, like the annual premium requirement and the ORPP provision, appear not to apply to the single premium policy the Blisses believed they had purchased. From time to time, the Blisses also received other communications from Jackson National referring to vanishing premiums in terms that seemed not to apply to their policy. Consistent with Jackson National's instruction to them, they immediately and repeatedly consulted with John Fattig to resolve their questions. See August 27, 1990 letter of Douglas Miller, Jackson National brokerage manager, to Mr. and Mrs. Bliss. Fattig repeatedly reassured them, after reportedly checking with Jackson National, that they had in fact purchased a single premium policy and would not have to pay additional premiums.

In September 1995, the Blisses received notice to pay an additional premium of $6,000. It was then, they contend, that their earlier concerns, continuously allayed by Fattig, ripened into suspicion of wrongdoing. Jackson National maintains that the Blisses had inquiry notice upon receipt of their policy, when they undisputedly recognized discrepancies.

 The discovery rule applies when it is difficult for the injured party to learn of the wrongful act. *S.V. v. R.V.*, 933 S.W.2d at 6. To be inherently undiscoverable, "an injury need not be absolutely impossible to discover." *Id.* at 7. Application of the rule depends on the circumstances in which the injury occurred and the plaintiff's diligence as well. *Id.* When the wrong and injury were unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff, accrual of the cause of action is delayed. *Id.*

 On the present record, there is at least a genuine issue of fact as to whether the Blisses should have discovered the alleged wrong prior to 1995. Yes, discrepancies in some policy terms and in certain Jackson National literature put them on inquiry notice. Yet, other policy terms confirmed the Blisses' understanding that they had purchased a single premium policy. And when they made inquiry, in accordance with Jackson National's direction, they were repeatedly reassured that their understanding was correct. Under these circumstances, it appears the Blisses exercised due diligence. They cannot be said to have merely sat on their rights. Their failure to discover the wrong prior to 1995 cannot be said to have been their fault. Their injury therefore appears to have been "inherently undiscoverable."

Further, their injury is "objectively verifiable" in that they have received bills for additional premiums beyond the large lump-sum single premium paid during the first year of the policy. The Court therefore concludes that the discovery rule applies and Jackson National has failed to

carry its burden of negating it as a matter of law.

### 3. Gerald Zaidman

Plaintiff Gerald Zaidman, Trustee of the Harry A. Young, Jr. Irrevocable Trust, commenced his action here in the Western District of Michigan on April 16, 1996. In accordance with the Court's earlier ruling, his tort claims are governed by the applicable Michigan statutes of limitations. Under Michigan law, the relevant periods of limitation are as follows:

fraud—6 years;

negligent misrepresentation—3 years;

negligent supervision—3 years;

breach of fiduciary—3 years.[10]

Michigan law makes special provision, however, for actions based on causes of action accruing outside of Michigan. M.C.L. § 600.5861. Such an action may not be brought after expiration of the period of limitation established by Michigan law or by the law of the state where the cause of action accrued. *Id.* Thus the shorter of the two applicable periods applies to each such claim.

Zaidman's claims accrued in Illinois, where Harry A. Young, Jr., purchased two Ultimate II policies, one in March 1990 and one in May 1993. Under Illinois law, all of Zaidman's tort claims are governed by a five-year limitation period. 735 I.L.C.S. § 5/13–205. Thus, Illinois' five-year period applies to Zaidman's fraud claim and Michigan's three-year period applies to the negligence and breach of fiduciary duty claims.

 Under Michigan law, a claim generally accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." M.C.L. § 600.5827. "The time of the wrong triggering the running of the limitation period is the date a plaintiff's injury results from a breach of duty." *Lemmerman v. Fealk,* 449 Mich. 56, 64,

534 N.W.2d 695 (1995). However, the discovery rule is applied to prevent unjust results "when a plaintiff would otherwise be denied a reasonable opportunity to bring suit because of the latent nature of the injury or the inability to discover the causal connection between the injury and the defendant's breach of duty owed to the plaintiff." *Id.* at 65–66, 534 N.W.2d 695. "Where the discovery rule is found to be appropriate, a 'plaintiff's claim accrues when the plaintiff discovers, or through the exercise of reasonable diligence, should have discovered . . . . . (1) an injury, and (2) the causal connection between plaintiff's injury and the defendant's breach [of a duty to the plaintiff].'" *Id.* at 66, 534 N.W.2d 695, quoting *Moll v. Abbott Laboratories,* 444 Mich. 1, 16, 506 N.W.2d 816 (1993).

Plaintiff Harry Young purchased the two Ultimate II policies at issue and then later conveyed them to the Harry A. Young, Jr. Irrevocable Trust. He allegedly purchased both policies based on representations of sales broker Robert Szarvas that premiums would vanish after seven annual premium payments. Jackson National contends Harry Young, an attorney, was put on notice that his premiums were not guaranteed to vanish after receipt of his policies, on or about April 4, 1990 and July 28, 1993, respectively. Inasmuch as Zaidman commenced this action on April 16, 1996, less than three years after the second policy was issued, Jackson National concedes that none of the tort claims relating to that policy is time-barred. Jackson National maintains, however, that all such claims relating to the first policy, which issued more than six years prior to suit, are time-barred.

 Under Michigan law, "an insured is obligated to read his or her insurance policy and raise questions concerning coverage within a reasonable time after the policy is issued." *First Mercury Syndicate, Inc. v. Telephone Alarm Systems,*

---

**10.** M.C.L. §§ 600.5813, 600.5805(8).

*Inc.*, 849 F.Supp. 559, 564 (W.D.Mich. 1994). An insured is thus "presumed to have read the policy and is held to knowledge of its terms and conditions." *Id.*

██ Indeed, Harry Young testified in deposition that he had reviewed the 1990 policy upon receipt and had read the ORPP provision. H. Young Dep. pp. 75–79. The ORPP provision did not alert him to the possibility of a misunderstanding, he testified, because he read it in light of the projected performance illustration he had reviewed when he met with Szarvas and decided to purchase the policy. He regarded the illustration, showing the premium vanishing after seven years, "as a clarification of how the policy worked." *Id.* at 78. Because Szarvas confirmed this understanding, *see id.* at 71, 79, Young also attached little significance to the illustration disclaimer, "Projected values are neither guarantees nor estimates." *Id.* at 71.

Yet, when the language of the ORPP is considered in light of the illustration, which includes the disclaimer concerning the nature of the illustrated projected performance, it simply cannot reasonably be construed to support the understanding that the premiums would automatically and finally vanish after seven years. Both documents indicate in different ways that the vanishing of the premium is a possibility, a potentiality or a contingency, not a certainty. For the reasons stated above in connection with the claims of Paul Christiansen, see pp. 21–23, Young's receipt of the policy and review of the ORPP must be deemed to have put him on inquiry notice. He was then obliged, in the exercise of due diligence, to make a reasonable and timely investigation and satisfy himself as to whether the nature of the policy and his premium obligations had been misrepresented.

Yet, unlike Roy Bliss, see above, pp. 856–857, Harry Young appears not to have made any inquiry of Robert Szarvas or of Jackson National itself, following receipt of the policy. Had he done so, he would either have discovered the wrongdoing of which he now complains or he would have at least, like Roy Bliss, satisfied his duty to exercise due diligence. In the present record there is no evidence that Young exercised due diligence after receiving the policy in March 1990. On this point, there is no genuine issue of material fact. It follows that Zaidman's tort claims based on the 1990 policy, filed more than six years after he received inquiry notice, are time-barred under the governing statutes of limitations and Jackson National is, to this extent, entitled to summary judgment. *See Moll*, 444 Mich. at 26–27, 506 N.W.2d 816 (recognizing appropriateness of summary judgment based on statute of limitations where facts are not disputed).

### 4. Summary

In sum, the Court finds that Jackson National is, based on the limitations defense, entitled to summary judgment on the tort claims (fraud, negligent misrepresentation, negligent supervision and breach of fiduciary duty) asserted by Paul Christiansen, the Fleischers and Gerald Zaidman, to the extent Zaidman's claims are based on the policy issued in March 1990. As to the tort claims of the Everetts, the Blisses and Gerald Zaidman, to the extent Zaidman's claims are based on the policy issued in May 1993, genuine issues of material fact remain which preclude summary judgment based on the limitations defense.

### D. Fraud

#### 1. Parol Evidence Rule

██ Jackson National also challenges plaintiffs' fraud claims, contending the parol evidence rule bars evidence of prior representations that would contradict the terms of their policies.[11]

---

11. Jackson National does not expressly challenge Gerald Zaidman's claim on this ground, presumably because the parol evidence rule, as it operates under Illinois law, does not bar evidence of prior representations offered to show fraud in the inducement. *See GreatAm-*

### (a) The Everetts

■ Ohio law, which governs the Everetts' fraud claim, favors Jackson National in this regard:

> If contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, then evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to the terms of the final agreement are generally excluded from consideration by the court.

*Bollinger, Inc. v. Mayerson*, 116 Ohio App.3d 702, 689 N.E.2d 62, 69 (1996). An exception is recognized for parol evidence offered to show fraud in the inducement. *Id.* The exception is not so broad, however, as to allow a party to prove fraud by showing he was induced to enter into an agreement by a promise that was within the scope of the integrated agreement but was ultimately not included in it. *Id.; Wall v. Firelands Radiology, Inc.*, 106 Ohio App.3d 313, 666 N.E.2d 235, 242 (1995). "The claim for fraud must be premised on matters extrinsic to the written contract." *Bollinger*, 689 N.E.2d at 69.

■ The Court has already concluded that the Everetts' policy is fully integrated. See above, pp. 849–850. Before they decided to purchase the policy, the Everetts were allegedly assured by sales agent Jack Stitt that their annual premium would vanish after six annual premium payments. Such a representation clearly relates to a subject matter covered by the ORPP provision, although it is inconsistent with the ORPP provision. It is not related to a matter extrinsic to the policy. To permit the Everetts to introduce evidence of Stitt's representation in order to add to or vary terms of an integrated contract would defeat the purpose of an integration clause and be contrary to Ohio law. See *Wall*, 666 N.E.2d at 241. It follows that parol evidence of Stitt's representation cannot be considered in support of their fraud claim.

### (b) The Blisses

■ The Blisses' fraud claim is governed by Arizona law. In Arizona, there are two apparently inconsistent lines of authority. According to one line, "parol evidence is always admissible to show fraud, .... even though it has the effect of varying the terms of a writing between the parties." *Lutfy v. R.D. Roper & Sons Motor Co.*, 57 Ariz. 495, 115 P.2d 161, 166 (1941); see also *Lusk Corp. v. Burgess*, 85 Ariz. 90, 332 P.2d 493, 495 (1958); *Dowdle v. Young*, 1 Ariz.App. 255, 401 P.2d 740, 743 (1965). Other decisions have held that parol evidence is not admissible, even to show fraud, where it squarely contradicts the terms of the written agreement. *Spudnuts, Inc. v. Lane*, 131 Ariz. 424, 641 P.2d 912, 913 (1982); *Sun Lodge, Inc. v. Ramada Development Co.*, 124 Ariz. 540, 606 P.2d 30, 32 (1979).

Both lines of authority have been reasonably reconciled in *Pinnacle Peak Developers v. TRW Investment Corp.*, 129 Ariz. 385, 631 P.2d 540, 547 (1980). In *Pinnacle Peak*, the court concluded that "application of the parol evidence rule moves along a continuum based on the extent of the contradiction and the relative strength and sophistication of the parties and their negotiations." *Id.*

The extrinsic evidence the Blisses would have the Court consider relates to the oral and written representations of John Fattig to the effect that theirs was a single premium policy. While these representations appear to be at odds with the ORPP provi-

---

erica Leasing Corp. v. Cozzi Iron and Metal, Inc.*, 76 F.Supp.2d 875, 878 (N.D.Ill.1999) (fraud in the inducement may justify coordination of prior understandings which would otherwise be excluded under the parol evidence rule); *Federal Deposit Ins. Corp. v. Bru-no*, 777 F.Supp. 1432, 1436 (N.D.Ill.1991) (parol evidence rule does not bar evidence of fraud in the inducement even though false promise is inconsistent with terms of written agreement).

sion, they are consistent with other terms of the policy, namely the application and the single premium rider. They are thus not entirely contradictory of the policy terms. Further, consideration of the relative strength and sophistication of the parties is a factor which also weighs heavily in favor of allowing the extrinsic evidence.

Accordingly, applying Arizona law, the Court concludes that extrinsic evidence is admissible in support of the Blisses' claims for fraud in the inducement.

### 2. Justifiable Reliance

The parties agree that justifiable reliance is an essential element of plaintiffs' fraud claims in each of the relevant jurisdictions. See *Williams v. Aetna Finance Co.,* 83 Ohio St.3d 464, 700 N.E.2d 859 868 (1998); *Wells Fargo Credit Corp. v. Smith,* 166 Ariz. 489, 803 P.2d 900, 905 (1990); *City of Chicago v. Michigan Beach Housing Coop.,* 297 Ill.App.3d 317, 231 Ill.Dec. 508, 696 N.E.2d 804, 809 (1998). Whereas the representations allegedly relied on are contradicted by the terms of their policies, Jackson National contends plaintiffs' reliance was, as a matter of law, not justifiable.

### (a) The Everetts

■ The Court has already concluded that evidence of Jack Stitt's representation to the Everetts that their annual premium would vanish after six years is barred by the parol evidence rule. Further, even if evidence of any sales illustration the Everetts allegedly relied on were admitted, it would be insufficient to support their fraud claims. The sales illustration undisputedly and clearly advised the reader that it is "not a contract," that "projected values are neither guarantees nor estimates," and that projected values are based on the "current" interest crediting rate, which is greater than the minimum interest rate guaranteed. These disclosures appear in upper-case letters across the center of each page of the illustration. Thus, even though the illustration showed the Ever-

etts' premiums vanishing after the sixth year, in view of the above disclosures, the Everetts simply cannot be deemed to have justifiably relied on the illustration alone as a promise or representation that their premiums would in fact vanish after six annual premium payments. The Everetts having failed to adduce admissible evidence that would create a triable fact issue regarding this essential element of their fraud claim, it is apparent that Jackson National is entitled to summary judgment on the claim.

### (b) The Blisses

■ Under Arizona law, evidence of John Fattig's representations to the Blisses concerning the single premium nature of their policy is not barred by the parol evidence rule. Jackson National insists that to the extent Fattig's representations are contradicted by the terms of the policy, a fact which Roy Bliss clearly recognized, any reliance upon them was not justified. In support, Jackson National cites *Jones v. Chiado Corp.,* 137 Ariz. 298, 670 P.2d 403, 405 (1983), where a fraudulent inducement claimant was held to have no right to rely on representations contrary to the clear language of the parties' agreement.

Jackson National's argument is unpersuasive for three reasons. First, as explained above, see p. 856, Fattig's representations were not entirely contrary to the clear language of the policy, but were in fact consistent with some terms. That is, the policy terms were internally inconsistent, not at all clear. Second, the Blisses had been expressly referred to Fattig by Jackson National for answers to any questions they had about the policy. Upon recognizing the inconsistency in policy terms, the Blisses were therefore justified in relying on the answers they received from Fattig, who represented that he had checked with Jackson National. Third, the *Jones* decision, relied on by Jackson National, is of questionable validity. See *Lundy v. Airtouch Communications, Inc.,*

81 F.Supp.2d 962, 969 (D.Ariz.1999); *Lubin v. Johnson,* 169 Ariz. 464, 820 P.2d 328, 328–29 (1991). The *Lundy* and *Lubin* rulings recognize that more recent decisions of the Arizona courts have shown a willingness to relieve persons of the plain terms of written agreements by reason of separate oral understandings and agreements. See *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388 (1984); *Lindsey v. University of Arizona,* 157 Ariz. 48, 754 P.2d 1152 (1987).

Accordingly, the Court concludes there are genuine fact issues concerning the reasonableness of the Blisses' reliance on Fattig's representations.

### (c) Gerald Zaidman

The tort claims asserted by plaintiff Zaidman based on the policy Harry Young purchased in May 1993 are not time-barred. See above at pp. 857–858. Harry Young allegedly purchased the 1993 policy based on 1990 representations of Robert Szarvas to the effect that premiums would vanish after seven annual premium payments. Jackson National contends Young cannot have justifiably relied on these representations because they are contrary to the policy terms.

Under governing Illinois law, Young had the duty to read the policy and inform the insurer of any discrepancy. *Floral Consultants, Ltd. v. Hanover Ins. Co.,* 128 Ill.App.3d 173, 83 Ill.Dec. 401, 470 N.E.2d 527, 529 (1984). Indeed, Young, an attorney, testified that he did read the policy. Yet, rather than heed the apparent import of the ORPP provision, he chose to view it as having been clarified by Szarvas's representations and by the sales illustration he had seen before buying the first policy in 1990.[12]

For the reasons stated above at pp. 857–858, Young's reliance in this regard simply cannot be deemed to have been reason-able. The following language is directly on point:

> Illinois courts "have consistently refused to extend the doctrine of fraudulent inducement to vitiate contracts where the complaining party could have discovered the fraud by reading the instrument and had the opportunity to do so. In such cases, any reliance upon the claimed misrepresentation has been held to be unreasonable as a matter of law, so that the contract stands as written."

*GreatAmerica Leasing Corp. v. Cozzi Iron & Metal, Inc.,* 76 F.Supp.2d 875, 878 (N.D.Ill.1999), quoting *Kolson v. Vembu,* 869 F.Supp. 1315, 1322 (N.D.Ill.1994).

Accordingly, no credible evidence of justifiable reliance having been presented, Jackson National is entitled to summary judgment on Zaidman's fraud claim.

### E. Negligent Misrepresentation

For the reasons stated above in connection with the factual insufficiencies of the fraud claims asserted by the Everetts and Zaidman, see pp. 858–859, 861, the negligent misrepresentation claims of these plaintiffs also fail to withstand the motion for summary judgment. The Everetts and Zaidman have failed to adduce evidence supporting a finding of justifiable reliance, which is also an essential element of their negligent misrepresentation claims. See *Delman v. City of Cleveland Heights,* 41 Ohio St.3d 1, 534 N.E.2d 835, 838 (1989); *Neptuno Treuhand–Und Verwaltungsgesellschaft Mbh v. Arbor,* 295 Ill.App.3d 567, 229 Ill.Dec. 823, 692 N.E.2d 812, 818 (1998).

The factual support for the Blisses' negligent misrepresentation claim is stronger. However, Jackson National maintains the claim is barred by the economic loss doctrine. "Generally, under the 'economic loss' rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort." *Apollo Group, Inc. v. Avnet, Inc.,*

---

12. Under Illinois law, these extrinsic matters are properly considered by the Court in sup-port of fraud in the inducement notwithstanding the parol evidence rule. See note 11.

58 F.3d 477, 479 (9th Cir.1995). "Instead, the claimant is limited to recovery under the law of contract." *Id.*

The Blisses acknowledge that their losses are purely pecuniary, but argue their negligent misrepresentation claim is not barred by the economic loss rule. In *Apollo,* the Ninth Circuit rejected this argument, holding that Arizona courts read the economic loss rule broadly and that negligent misrepresentation is not an exception to the rule. *Id.* at 480. If contractual remedies were not available—because of lack of privity, for instance—the *Apollo* court recognized economic losses might be recoverable in negligent misrepresentation. *Id.* at 480 n. 4; see also *Southwest Pet Products, Inc. v. Koch Industries, Inc.,* 89 F.Supp.2d 1115, 1129 (D.Ariz.2000). Here, however the Blisses are not without contractual remedies.

Moreover, the fact that this is a non-product liability tort claim does not remove it from the economic loss rule. *Southwest,* 89 F.Supp.2d at 1126 (claims based on alleged misrepresentations going to the heart of the parties' contract barred by economic loss rule). The Blisses' negligent misrepresentation claim does not grow out of circumstances independent of their contractual relationship with Jackson National. It is therefore barred under Arizona law by the economic loss rule.

It follows that Jackson National is entitled to summary judgment on the negligent misrepresentation claims of the Everetts, Zaidman and the Blisses.

### F. Negligent Supervision

In their negligent supervision claims, plaintiffs allege Jackson National failed to exercise reasonable care and diligence in training and supervising the independent sales agents who made the sales presentations to plaintiffs and explained the sales illustrations to them. Jackson National contends these claims, too, are barred by the economic loss doctrine.

#### 1. The Everetts

The Everetts' negligent supervision claim is governed by Ohio law, which also recognizes the economic loss doctrine. Indeed, in *Ferro Corp. v. Blaw Knox Food & Chemical Equipment Co.,* 121 Ohio App.3d 434, 700 N.E.2d 94, 98 (1997), the court specifically held that where a plaintiff seeks purely economic losses growing out of a contractual relationship, the plaintiff is limited to contract remedies and a claim for negligent supervision is barred. The Everetts having submitted no contrary authority, the Court concludes the Everetts' negligent supervision claim is also barred by the economic loss doctrine.

#### 2. Gerald Zaidman

Zaidman's negligent supervision claim fares no better under Illinois law. In *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.,* 176 Ill.2d 160, 223 Ill.Dec. 424, 679 N.E.2d 1197, 1199 (1997), the court observed that a "plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract." *Id.,* quoting *Anderson Electric, Inc. v. Ledbetter Erection Corp.,* 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246, 249 (1986). The *Fireman's Fund* court recognized there are three exceptions to the economic loss rule, none of which, however, includes a claim such as Zaidman's for negligent supervision. 223 Ill.Dec. 424, 679 N.E.2d at 1199. In *Anderson,* in fact, the court specifically held a negligent supervision claim barred by the economic loss rule. See also *Tolona Pizza Products Corp. v. Davy McKee Corp.,* 187 Ill.App.3d 365, 134 Ill.Dec. 942, 543 N.E.2d 225, 227–28 (1989). Zaidman has adduced no contrary authority. Accordingly, the Court concludes that Zaidman's negligent supervision claim, too, is barred by the economic loss rule.

#### 3. The Blisses

As discussed above, the Arizona courts read the economic loss rule broadly. The

Blisses have cited no authority for the proposition that their negligent supervision claim avoids the economic loss rule any more successfully than their negligent misrepresentation claim.

Jackson National is therefore entitled to summary judgment on the negligent supervision claims of the Blisses, the Everetts and Zaidman.

### G. Breach of Fiduciary Duty

■ Jackson National contends plaintiffs' breach of fiduciary duty claims fail for lack of evidence that it was in a fiduciary relationship with any of them. As a general rule in each of the three subject jurisdictions, the relationship between an insurance company and its insured is not inherently fiduciary in nature. See *Craggett v. Adell Ins. Agency,* 92 Ohio App.3d 443, 635 N.E.2d 1326, 1331 (1993); *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565, 571 (1986); *Nielsen v. United Services Automobile Ass'n,* 244 Ill.App.3d 658, 183 Ill.Dec. 874, 612 N.E.2d 526, 531 (1993). Plaintiffs maintain, however, that they placed trust in the expertise of their respective sales brokers, giving rise to fiduciary duties. These circumstances create fact issues, they contend, which preclude summary judgment.

### 1. The Everetts

■ The Everetts' breach of fiduciary duty claim is evaluated under Ohio law, which recognizes that fiduciary responsibilities may arise from an informal confidential relationship where "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Craggett,* 635 N.E.2d at 1331, quoting *Stone v. Davis,* 66 Ohio St.2d 74, 419 N.E.2d 1094 (1981). The burden of proving the existence of such a relationship rests with the party asserting it. *Id.* Such a confidential relationship cannot be unilateral, however; it arises "only if both parties understand that a special trust or confidence has been reposed." *Id.*

■ The Everetts contend such a confidential relationship arose between them and Jack Stitt. In support, they cite deposition testimony of Patricia Everett to the effect that they advised him of their needs and then followed his advice because "he was the agent we were working with at the time" and they "thought he was a reputable individual who could handle the request." P. Everett Dep. at p. 14.

This evidence is remarkably similar to that which the *Craggett* court found to be insufficient to give rise to a fiduciary relationship. 635 N.E.2d at 1332. The mere reliance of an insured upon the advice of a sales agent, without more, was deemed to suggest an "ordinary" business relationship, not one in which special or extraordinary trust was reposed or undue influence exploited. *Id.* Here, as in *Craggett,* there is no evidence of a longstanding relationship between Stitt and the Everetts. They appear rather to have met only a couple of times in the months preceding their purchase of the Jackson National policy.

Further, plaintiffs have adduced no evidence to support a finding that their alleged special confidence in Stitt was other than a unilateral understanding. There is no evidence that Stitt or, more importantly, Jackson National, was aware of their special trust in him.

■ Nor is there evidence to support a finding that Stitt's conduct is properly imputed to Jackson National in any event. Stitt was not a Jackson National employee, but an independent insurance sales broker. As such, he served not as an agent of Jackson National, but was obliged to exercise good faith on behalf of his customers, the Everetts. See *Craggett,* at 1332 ("absent a fiduciary relationship, an insurance sales agency has a duty to exercise good faith in obtaining only those policies of insurance which its customer requests"). If he breached this duty, then he, not Jackson National, is the responsible party.

864

There being no genuine issue of material fact, Jackson National is entitled to summary judgment on the Everetts' breach of fiduciary duty claim.

## 2. Gerald Zaidman

 Illinois law governs Gerald Zaidman's breach of fiduciary duty claims. It is very similar to Ohio law. "A fiduciary relationship and the attendant duties may arise as a result of the special circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Ransom v. A.B. Dick Co.*, 289 Ill.App.3d 663, 224 Ill.Dec. 753, 682 N.E.2d 314, 321 (1997); *State Security Ins. Co. v. Frank B. Hall & Co.*, 258 Ill.App.3d 588, 196 Ill.Dec. 775, 630 N.E.2d 940, 945 (1994). The party asserting the existence of such a relationship has the burden of establishing it by clear and convincing evidence. *Ransom*, 224 Ill.Dec. 753, 682 N.E.2d at 321–22.

Plaintiff Zaidman has presented no evidence in furtherance of carrying this burden. There is no evidence that Harry A. Young, Jr., purchaser of the policies, had developed a special relationship with Jackson National. Nor is there evidence that Young even had such a relationship with sales broker Robert Szarvas. In fact, Young's deposition testimony demonstrates he did not place special trust in Szarvas's advice. Young relied primarily on his own reading of the sales illustration and Szarvas's confirmation, after a short conversation, that his understanding was correct. Young Dep. pp. 70–71. There is no reason to conclude other than that the parties engaged in the subject transactions at arms length and that no fiduciary relationship existed. Plaintiff Zaidman has thus clearly failed to carry his burden and has failed even to adduce evidence sufficient to create a genuine issue of material fact.

## 3. The Blisses

 Under Arizona law, applicable to the Blisses' claim, although an insurance company is not a fiduciary to its insured, it may have some duties of a fiduciary nature, such as duties to treat the insured honestly and fairly. *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 571 (1986). Considering the inconsistencies and ambiguities in the terms of the Blisses' policy, and considering the erroneous reassurances of sales broker John Fattig, to whom Jackson National had referred the Blisses for answers to their questions, a reasonable jury could conclude that Jackson National breached its duties of honesty and fairness. See pp. 855–857, above. Accordingly, Jackson National's motion for summary judgment on the Blisses' breach of fiduciary duty claim will be denied.

## H. Unjust Enrichment

As an alternative theory of relief, plaintiffs ask the Court to impose a constructive trust upon monies wrongfully obtained by Jackson National, to prevent unjust enrichment. In challenging these claims, Jackson National contends such equitable relief is unavailable as a matter of law because plaintiffs have acknowledged the existence of their written contracts with Jackson National and have in fact sued upon them.

 Indeed, in all five of the subject jurisdictions, the law is clear: a claim for unjust enrichment is an action based on a contract implied-in-fact or quasi-contract and cannot lie where there exists a valid express contract governing the parties' relationship and covering the same subject matter. *Lance Camper Mfg. Corp. v. Republic Indemnity Co.*, 44 Cal.App.4th 194, 203, 51 Cal.Rptr.2d 622 (1996); *Weiper v. W.A. Hill & Associates*, 104 Ohio App.3d 250, 661 N.E.2d 796, 804 (1995); *Jensen Construction Co. v. Dallas County*, 920 S.W.2d 761, 774 (Tex.App.—Dallas 1996); *USLife Title Co. of Arizona v. Gutkin*, 152 Ariz. 349, 732 P.2d 579, 583 (1986); *Williams v. National Housing Exchange, Inc.*, 949 F.Supp. 650, 653 (N.D.Ill.1996).

At this point, there is no genuine issue of material fact. All of the plaintiffs' relationships with Jackson National are or were governed by written contracts, their policies, which invariably included provisions defining the circumstances under which their premiums could vanish. Their equitable claims for unjust enrichment are therefore not maintainable and summary judgment will be awarded to Jackson National.

## I. Michigan Pricing and Advertising Act

■ Finally, plaintiffs have also asserted claims under Michigan's Pricing and Advertising Act, M.C.L. § 445.351 *et seq.*, alleging Jackson National published advertisements concerning vanishing premium policies which contained untrue, deceptive or misleading statements, and which caused them to suffer loss. The claims are premised on allegedly misleading sales illustrations prepared and disseminated by Jackson National and shown to plaintiffs by their respective sales brokers.

■ Whether an advertisement contains untrue, deceptive or misleading statements in violation of the Pricing and Advertising Act is to be determined with reference to the common law tort of fraud. *Overton v. Anheuser-Busch Co.*, 205 Mich. App. 259, 261, 517 N.W.2d 308 (1994); *Mayhall v. A.H. Pond Co., Inc.*, 129 Mich. App. 178, 182, 341 N.W.2d 268 (1983). Under Michigan law, reasonable reliance is an essential element of a fraud claim. *Novak v. Nationwide Mutual Ins. Co.*, 235 Mich. App. 675, 689–90, 599 N.W.2d 546 (1999). That is, plaintiffs cannot be deemed to have suffered loss as a result of Jackson National's deceptive advertising unless they show they reasonably relied on an untrue, deceptive or misleading statement.

It is not clear that all of the plaintiffs even relied on sales illustrations in making their decisions to purchase Jackson National policies. It is undisputed, however, that the illustrations they were shown were substantially similar to the illustration described above in connection with the Everetts' purchase. See pp. 858–859. Each illustration not only projected that the policyholder's out-of-pocket premium obligation could vanish after a defined number of years, but also expressly disclosed that the projected values were "neither guarantees nor estimates" and were based on the "current" interest crediting rate, which was greater than the minimum interest rate guaranteed. Considering that these disclosures appear in upper-case letters across the center of each page of the illustration, plaintiffs cannot be deemed to have reasonably relied on the illustrations as a promise or guarantee or representation that their premiums would certainly vanish after the defined number of years.

Absent reasonable reliance, plaintiffs cannot be deemed to have suffered loss as a result of deceptive advertising under the Pricing and Advertising Act. In this respect, there is no genuine issue of material fact. Jackson National is therefore entitled to judgment as a matter of law on all plaintiffs' claims under the Michigan Pricing and Advertising Act.

## III. CONCLUSION

In sum, the Court has concluded for the reasons stated above that Jackson National's motion for summary judgment must be granted in part and denied in part. Judgment will be awarded to Jackson National as a matter of law on all of plaintiffs' claims with the exception of the breach of contract, fraud and breach of fiduciary duty claims of the Blisses. A judgment order consistent with this opinion shall issue forthwith.